IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELVIS RUSNAK, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 25-CV-292-LLA |
| ) | |
| THE UNITED STATES OF AMERICA, ) et al., ) | |
| Defendants. ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXTEND TIME TO RESPOND TO THE COMPLAINT AND TO CONSOLIDATE BRIEFING**

Plaintiffs Elvis Rusnak and Clayton Zook respectfully oppose the government's motion for a second extension to its deadline to respond to the complaint in this case.

Plaintiffs previously consented to the government's request for a 30-day extension in order to facilitate the transition of the case to two newly-assigned government counsel. On May 6, 2025, only eight days before its (extended) deadline, Defendants moved for a second extension in this case and to consolidate briefing with a later-filed case presenting the same legal issues.

Defendants have failed to meet their burden of establishing good cause for a further extension in this case. Additionally, government counsel waited too long to propose consolidating briefing. The request to consolidate is in fact nothing more than a thinly-veiled attempt to circumvent the good cause standard that Defendants cannot meet under these circumstances. Moreover, Plaintiffs would be prejudiced by the delay Defendants seek in filing and briefing its forthcoming motion to dismiss. Thus, Defendants' motion should be denied.

1

## BACKGROUND

Plaintiffs are veterans who were injured in the 1996 Khobar Towers bombing while honorably serving this nation overseas as active-duty members of the United States Air Force. Plaintiffs were entitled to receive lump sum catch-up payments under the Fairness for 9/11 Families Act ("Fairness Act"), which was enacted on December 29, 2022. Due to a truly Kafkaesque bureaucratic quagmire, however, Plaintiffs did not receive those payments.

On January 14, 2025, Plaintiffs' pro bono counsel wrote to Defendants, through counsel, explaining that Defendants had, in numerous ways, misinterpreted the statute governing the award of lump sum catch-up payments from the U.S. Victims of State Sponsored Terrorism Fund ("USVSST"). On January 31, 2025, having received no substantive response from Defendants, Plaintiffs filed the complaint in this action. On the same day, Plaintiffs' counsel emailed a courtesy copy of the complaint to the U.S. Attorney's Office for the District of Columbia and the Department of Justice Federal Programs Branch and began discussions about reserving funds sufficient to satisfy any judgment in this case to avoid burdening the Court with unnecessary emergency motion practice.

While the broader statutory scheme governing the USVSST has evolved through a complex patchwork of amendments, the claims here turn on relatively straightforward legal issues. In the Fairness Act, Congress appropriated $3 billion, 34 U.S.C. § 20144(d)(4)(D)(iv)(III), for authorization of lump sum catch-up payments to "each 1983 Beirut barracks bombing victim" and "each 1996 Khobar Towers bombing victim" in amounts determined by the Comptroller General, *id*. § 20144(d)(4)(D)(iii)(I),(II). Congress defined "1996 Khobar Towers bombing victim" to mean (as pertinent here) "a plaintiff . . . who has an eligible claim under [34 U.S.C. § 20144(c)] that arises out of the June 25, 1996 bombing of the Khobar Tower housing complex in Saudi Arabia." *Id*. § 20144(j)(16)(A). There is no dispute that the Plaintiffs are 1996 Khobar Towers victims as

2

defined in the Fairness Act. Accordingly, the Fairness Act required that they be authorized lump sum catch-up payments in amounts determined by the Comptroller General. The claims here seek simply to enforce the government's obligation to comply with this clear statutory mandate.

On March 21, 2025, Defendants' counsel notified Plaintiffs' counsel that she would be departing on extended leave and the case would be taken over by other counsel in the Federal Programs Branch. Ex. 1. Government counsel requested a 30-day extension to Defendants' deadline to respond to the complaint (from April 14 until May 14) to allow for transition of the case. *Id.* To avoid emergency motion practice, counsel from both sides engaged in extended discussion about holding funds to satisfy any judgment.

While those discussions were ongoing, *Christie v. United States*, 25-cv-932-LLA (D.D.C.) was filed on March 28, 2025. *Christie* was designated as related to this case.

On April 1, 2025, the government filed its motion, with Plaintiffs' consent, for a 30-day extension in this case. ECF No. 13. Government counsel wrote "[g]ood cause exists for the requested extension of the deadline to respond to the Complaint." *Id*. at 1. Defendants justified the requested extension based upon the transition of defense counsel. The 30-day extension would "allow newly assigned counsel to familiarize themselves with the claims and issues in this lawsuit, and prepare an adequate response to the Complaint." *Id*. On April 2, Plaintiffs' counsel were introduced by email to the two new government counsel who took over the case. Ex. 2. In a minute order entered on April 8, 2025, the Court granted Defendants' extension motion and reset their deadline to respond to the complaint in this case as May 14, 2025.

During the first weeks of April, the parties worked together to draft an updated joint stipulation in response to this Court's April 8 Order. Government counsel filed this joint stipulation on April 14, 2025. ECF No. 15. Three days later, the parties in *Christie* filed a similar

joint stipulation. *Christie, et al.*, 25-cv-00932, ECF No. 12. Government counsel gave no indication of any need for further extension in the *Rusnak* case or any intention to file a motion to consolidate the two cases' briefing.

On April 30 at 6:45 p.m., Defendants' counsel first raised the issue of a second 37-day extension of their deadline to respond to the complaint, from May 14 until June 20. Ex. 3. In their request for extension, government counsel disavowed any intent of "suggesting that the cases be formally consolidated at this time . . . ." *Id*. On May 2, Plaintiffs' counsel responded that the *Rusnak* Plaintiffs do not consent to further extension of the government's deadline. *Id*. The *Rusnak* Plaintiffs had already consented to the government's request for an extension to accommodate the transition to new counsel, and their counsel explained that any further delay would prejudice them. *Id*.

On May 5 at 5:11 p.m., government counsel announced for the first time—inconsistent with their disavowal five days earlier—that they would be moving to consolidate briefing in *Rusnak* and *Christie* "in the morning" and that they would seek extension of the deadline to respond to the complaint in this case until June 16. Ex. 4.

On May 6, 2025, eight days before their *Rusnak* deadline, government counsel moved this Court to "consolidate the briefing schedule" in *Rusnak* and *Christie* and "extend[] Defendants' operative deadline[] by approximately 30 . . . days in *Rusnak* . . . ." ECF No. 17, at 1. Government counsel also requested that the Court extend the briefing schedule until August 11, 2025. *Id*. The motion asserts that current counsel "recently joined these cases in light of extended leave of preexisting counsel" and that the Department of Justice "is facing emergency litigation across the country, despite widespread staffing shortages." *Id.* at 3. But the motion does *not* mention the

4

important fact that Defendants already obtained the full 30-day extension that they sought under materially the same circumstances. *See supra*.

# ARGUMENT

I. **DEFENDANTS FAILED TO MEET THEIR BURDEN OF ESTABLISHING GOOD CAUSE FOR A SECOND EXTENSION OF THE DEADLINE TO RESPOND TO THE COMPLAINT IN *RUSNAK*.**

An extension requested before expiration of a filing deadline may be granted on a showing of good cause. *See* Fed. R. Civ. P. 6(b)(1)(A). "The focus of the 'good cause' inquiry is whether the party seeking the extension has shown due diligence in meeting the deadline to respond." *McFadden v. Washington Metro. Area Transit Auth.*, 2014 WL 12776122, at *2 (D.D.C. Sept. 9, 2014).

Here, Defendants have not shown good cause. In fact, Defendants make no reference whatsoever to Rule 6(b) or the good cause standard. Nor do Defendants make any effort to satisfy the good cause standard by setting forth facts that demonstrate their due diligence in meeting their extended deadline. Their motion should be denied for this reason alone.

Defendants' motion asserts that current counsel "recently joined these cases in light of extended leave of preexisting counsel," ECF No. 17, at 3, but that was the basis for Defendants' first extension motion that this Court granted on April 8. The "new counsel" argument does not establish good cause for a second extension without a further showing of diligence or changed circumstances. Defendants also vaguely suggest that the burden of nationwide emergency litigation involving the federal government justifies the relief they seek. *Id*. But government counsel have provided no specific facts regarding changes in their workload since April 8, much less facts regarding the workloads of other attorneys in the Federal Programs Branch, or the D.C. U.S. Attorney's office. Defendants' motion therefore fails to establish changed circumstances that constitute good cause for a further extension. And the irony of the government's argument cannot

be overlooked. In one of the emergencies of the sort Defendants allude to, a well-respected conservative jurist summed up the government's position like this:

> It is difficult in some cases to get to the very heart of the matter. But in this case, it is not hard at all. The government is asserting a right to stash away residents of this country in foreign prisons without the semblance of due process that is the foundation of our constitutional order. Further, it claims in essence that because it has rid itself of custody that there is nothing that can be done.
>
> This should be shocking not only to judges, but to the intuitive sense of liberty that Americans far removed from courthouses still hold dear.

*Abrego Garcia v. Noem*, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025) (Wilkinson, J.). Such self-inflicted emergencies should not be accepted as good cause to delay justice to others. In any event, by the government's logic, it may never be convenient to respond to Plaintiffs' complaint. *See Aikens v. U.S. Postal Service Bd. of Governors*, 1980 WL 324425, *2 (D.C. Cir. 1980) (Edwards, J., dissenting) ("The lawyers, it seems, are no less busy six weeks after the judgment is handed down than two weeks after. If this court would decline to grant extensions of time, except for truly good cause shown, lawyers will meet filing deadlines, and this court can expeditiously dispose of its cases.").

Defendants also argue that a second extension would not prejudice Plaintiffs because funds have been held in abeyance for the duration of this litigation. Defendants ignore, however, that the delay they seek here is prejudicial even if funds remain available. If Plaintiffs prevail, it means that the government has unlawfully failed to award them approximately $2 million collectively. That is money that should have already been distributed to them as it was to their barracks-mates who were injured in the same terrorist attack, and it would be further delayed if the government motion were to be granted. *Id.* ("Unwarranted extensions of time…simply delay justice for the successful party…"). It should come as no surprise that delay in receipt of money is prejudicial.

The time value of money, after all, is one of the fundamental precepts of our economic system. *Proctor & Gamble Distrib. Co. v. Sherman*, 2 F.2d 165, 166 (S.D.N.Y.1924) (Hand, J.) ("The present use of my money is itself a thing of value . . . ."). And to add insult to injury, the Plaintiffs are individual veterans and federal civil servants whose jobs are now at risk due to government cutbacks. One Plaintiff has already been informed that there is a strong likelihood his position will be eliminated, and the other Plaintiff has reason to fear the same fate. For these individuals, prompt payment of amounts owed by the government is especially important. They are entitled to have their day in Court without further delay.

The government seeks to delay its response to the complaint by an additional 33 days beyond the 30-day extension already granted. That is not all. The government also seeks to impose a briefing schedule that extends for 56 days (from June 16 to August 11) as compared to the standard 21 days permitted for briefing under the local rules. *See* LCvR 7. In all, the government seeks to delay briefing on its motion to dismiss by 68 days (33 + 35) additional days.

Those 68 days matter to the individual Plaintiffs in this case, and the government has not come close to meeting with well-established legal standard to justify imposing this additional delay upon them. The government's motion should be denied.

## II. THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY DEFENDANTS' MOTION TO CONSOLIDATE BRIEFING.

When deciding a motion to consolidate briefing schedules under Federal Rule of Civil Procedure 42(a), courts consider whether prejudice to Plaintiffs outweighs the "considerations of convenience and economy." *Chang v. United States*, 217 F.R.D. 262, 265 (D.D.C. 2003). Courts also consider the delay that consolidation may cause to the Plaintiffs who filed their complaint first. *Diehl v. Money Source, Inc.*, 2018 WL 2994381, at *2 (S.D. Ala. June 13, 2018); *see Chang*,

217 F.R.D. 262 at 267 (consolidating matters but implementing an expedited briefing schedule to avoid delay in the original matter).

This Court should exercise its discretion to deny Defendants' request to consolidate briefing. As an initial matter, Defendants' request is window dressing: Government counsel disavowed any intent to consolidate briefing five days before filing their motion, and first suggested that they would move to consolidate only hours before filing their motion. Additionally, Defendants' consolidation motion was filed only eight days before their extended deadline to respond to the *Rusnak* complaint. This sort of pretextual motions practice should not be rewarded.

Defendants should have met and conferred about consolidation weeks ago if they believed it was necessary to achieve any sort of efficiency. But here there are no substantial efficiencies to be gained here by consolidating briefing. If Defendants are correct that "*Rusnak* and *Christie* revolve around nearly identical facts and claims," ECF No. 17, at 2, the government would presumably be filing the same brief in both cases. There would be no need to delay filing in *Rusnak* if the cases are identical. And it would present no additional burden for the government to put a different case caption on a brief addressing "identical facts and claims." As for relieving the "need for the Court to decide the same issues twice," *id*. at 3, that too is overstated. If the issues are indeed identical, the resolution of the issues in the first-filed case will also resolve them in the second-filed case. There is no substantial efficiency to be gained. In fact, the government is impermissibly using the artifice of a motion to consolidate to delay proceedings in the first-filed case. *See Diehl*, 2018 WL 2994381, at *2.

If the Court were nevertheless inclined to consolidate the briefing schedule over *Rusnak* Plaintiffs' objection, it should enter the standard briefing schedule set forth in the local rules: 14 days for opposition briefs and 7 days for reply.

|  |  |
|---|---|
| Dated: May 12, 2025 | Respectfully Submitted,<br>WILLIAMS & CONNOLLY LLP<br><br>/s/ F. Greg Bowman<br>F. Greg Bowman (D.C. Bar No. 486097)<br>Edward C. Reddington (D.C. Bar No. 463507)<br>680 Maine Avenue, SW<br>Washington, DC 20024<br>(202) 434-5000<br><br>*Attorneys for Plaintiffs* |