**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

ELVIS RUSNAK, *et al.*,

      *Plaintiffs*,

v.

THE UNITED STATES OF AMERICA, *et al.*,

      *Defendants*.

Case No. 25-cv-292-LLA

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

I.     Statutory Background ............................................................................................. 2

II.    Procedural Background........................................................................................... 6

LEGAL STANDARD ........................................................................................................ 7

ARGUMENT ..................................................................................................................... 8

I.     Dismissal of the Comptroller General Is Warranted ............................................. 8

II.    Plaintiffs Fail to State a Claim Against the Special Master ................................. 11

III.   The Court Lacks Jurisdiction to Review the Decisions of the Special Master and
the Prerequisite Findings of the GAO ................................................................. 15

       A.     The Special Master's Decisions with Regard to Compensation from the
Fund Are Not Subject to Judicial Review.............................................. 19

       B.     Plaintiffs' Challenge to the GAO's Interpretation of the Fairness Act Is
Likewise Precluded ................................................................................ 20

       C.     Plaintiffs Cannot Establish Standing ..................................................... 20

IV.   Plaintiffs' Alternative Claim Against the Special Master Fails As a Matter of Law ........ 21

V.    The Parties Have Already Stipulated to Preservation of Funds........................................ 23

CONCLUSION................................................................................................................. 23

## TABLE OF AUTHORITIES

**CASES**

*Albright v. Oliver*,
    510 U.S. 266 (1994) ................................................................................................ 7

*\*Alexander v. Sandoval*,
    532 U.S. 275 (2001) .............................................................................................. 10

*Ali v. Rumsfeld*,
    649 F.3d 762 (D.C. Cir. 2011) ............................................................................... 9

*Al-Owhali v. Ashcroft*,
    279 F. Supp. 2d 13 (D.D.C. 2003) ......................................................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 7

*Block v. Cmty. Nutrition Inst.*,
    467 U.S. 340 (1984) .............................................................................................. 16

*Bowen v. Mich. Acad. of Fam. Physicians*,
    476 U.S. 667 (1986) .............................................................................................. 16

*Bowsher v. Merck & Co.*,
    460 U.S. 824 (1983) ................................................................................................ 9

*Braun v. United States*,
    531 F. Supp. 3d 130 (D.D.C. 2021), *aff'd*, 31 F.4th 793 (D.C. Cir. 2022) .............................. 17

*Brownback v. King*,
    592 U.S. 209 (2021) .............................................................................................. 15

*Cause of Action Inst. v. Eggleston*,
    224 F. Supp. 3d 63 (D.D.C. 2016) ......................................................................... 13

*Chen v. Gen. Acct. Off.*,
    821 F.2d 732 (D.C. Cir. 1987) ................................................................................ 9

*Coll. Sports Council v. GAO*,
    421 F. Supp. 2d 59 (D.D.C. 2006) .......................................................................... 9

*Def. Arlington v. U.S. Dep't of Def*,
    2023 WL 8600567 (D.D.C. Dec. 12, 2023) .......................................................... 14

*Fla. Health Scis. Ctr. Inc. v. Sec'y of Health & Hum. Servs.*,
    830 F.3d 515 (D.C. Cir. 2016) .................................................................. 20

*Fornaro v. James*,
    416 F.3d 63 (D.C. Cir. 2005) ......................................................10, 11, 23

*Gray v. Off. of Pers. Mgmt.*,
    771 F.2d 1504 (D.C. Cir. 1985) ............................................................. 10

*Heckler v. Ringer*,
    466 U.S. 602 (1984) ......................................................................... 18, 19

*Hekmati v. United States*,
    153 Fed. Cl. 800 (Fed. Cl. 2021), *aff'd*, 51 F.4th 1066 (Fed. Cir. 2022) ................................ 18

*In re Cheney*,
    406 F.3d 723 (D.C. Cir. 2005) .......................................................... 10, 22

*Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*,
    219 F. Supp. 2d 20 (D.D.C. 2002) ................................................ 10, 12, 13

*Khadr v. United States*,
    529 F.3d 1112 (D.C. Cir. 2008) ............................................................... 7

*Knapp Med. Ctr. v. Hargan*,
    875 F.3d 1125 (D.C. Cir. 2017) ............................................................. 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ................................................................................. 7

*La. Pub. Serv. Comm'n v. FCC*,
    476 U.S. 355 (1986) ......................................................................... 14, 22

*Mercy Hosp., Inc. v. Azar*,
    891 F.3d 1062 (D.C. Cir. 2018) ............................................................. 15

*Norton v. S. Utah Wilderness All. (SUWA)*,
    542 U.S. 55 (2004) ................................................................................. 12

*O'Neill v. Garland*,
    2022 WL 17415057 (D.D.C. Dec. 5, 2022) ...................................... 17, 18

*Papasan v. Allain*,
    478 U.S. 265 (1986) ................................................................................. 8

*Pond Constructors, Inc. v. United States Gov't Accountability Off.*,
  2018 WL 3528309 (D.D.C. May 30, 2018) .............................................................. 9

*Power v. Barnhart*,
  292 F.3d 781 (D.C. Cir. 2002) ................................................................................ 10

*Ralpho v. Bell*,
  569 F.2d 607 (D.C. Cir. 1977) ................................................................................ 16

*Schneider v. Feinberg*,
  345 F.3d 135 (2d Cir. 2003) ................................................................................... 18

*Shoshone Bannock Tribes v. Reno*,
  56 F.3d 1476 (D.C. Cir. 1995) ................................................................................ 11

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
  549 U.S. 422 (2007) .................................................................................................. 7

*Texas Alliance for Home Care Servs. v. Sebelius*,
  681 F.3d 402 (D.C. Cir. 2012) ................................................................................ 20

*United States ex rel. Alaska Smokeless Coal Co. v. Lane*,
  250 U.S. 549 (1919) ................................................................................................. 11

*\*W. Org. of Res. Councils v. Zinke*,
  892 F.3d 1234 (D.C. Cir. 2018) ........................................................................ 12, 13

*Washington Legal Found. v. U.S. Sentencing Comm'n*,
  17 F.3d 1446 (D.C. Cir. 1994) .................................................................................. 9

*Washington v. U.S. Dep't of State*,
  996 F.3d 552 (9th Cir. 2021) .................................................................................. 15

*Wilbur v. United States*,
  281 U.S. 206 (1930) .......................................................................................... 22, 23

*Wilburn v. Robinson*,
  480 F.3d 1140 (D.C. Cir. 2007) ................................................................................ 9

*Williams v. Lew*,
  819 F.3d 466 (D.C. Cir. 2016) ................................................................................ 20

**STATUTES**

5 U.S.C. § 701 ........................................................................................................ 15

26 U.S.C. § 9602 ................................................................................................... 14

34 U.S.C. § 20144 .......................................................................................... *passim*

Air Transportation Safety and System Stabilization Act,
  Pub. L. No. 107-42, 115 Stat. 230 (2001) .......................................................... 18

Fairness for 9/11 Families Act,
  Pub. L. No. 117-328, 136 Stat. 4459 (2022) ........................................................ 3

**RULES**

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 7

**REGULATIONS**

Justice for United States Victims of State Sponsored Terrorism Act,
  81 Fed. Reg. 45,535 (July 14, 2016) ................................................................ 2, 3

**OTHER AUTHORITIES**

U.S. Gov't Accountability Off., GAO-25-107564, U.S. Victims of State Sponsored Terrorism
  Fund: 1983 Beirut Barracks and 1996 Khobar Towers Bombing Claimants Due $614 Million,
  (2024) ("GAO Report"),
  https://perma.cc/YNW6-JDKD ...................................................................... *passim*

U.S. Gov't Accountability Off., GAO-25-107564, U.S. Victims of State Sponsored Terrorism
  Fund: 1983 Beirut Barracks and 1996 Khobar Towers Bombing Claimants Due $614 Million,
  (Mar. 2025),
  https://perma.cc/YNW6-JDKD ............................................................................ 6

## INTRODUCTION

Plaintiffs Rusnak and Zook—two veterans who were injured in the 1996 Khobar Towers bombing and who seek compensation from the United States Victims of State Sponsored Terrorism Fund (the "Fund")—bring suit against Defendants to remedy what they view as an inter-governmental dispute over the issuance of additional lump sum catch-up funds pursuant to the Justice for United States Victims of State Sponsored Terrorism Act (the "Act"). Those purported statutory disputes among the Defendants, however, are ultimately irrelevant and cannot obscure the threshold issues in the Complaint that warrant dismissal.

*First*, Plaintiffs err in bringing suit against the Comptroller General, as he, along with the agency he heads, the Government Accountability Office (the "GAO"), is not a proper defendant under the Administrative Procedure Act (the "APA"), the Declaratory Judgment Act, or the Mandamus Act. *Second*, Plaintiffs fail to state a claim as a matter of law as to the remaining Defendants, because the Special Master lawfully authorized lump sum catch-up payments in accordance with the proposed sums identified in the statutorily mandated report issued by the GAO. *Third*, the Court lacks subject-matter jurisdiction to consider Plaintiffs' claims against the remaining Defendants, as the Act precludes Plaintiffs from challenging the Special Master's payment determinations, and Plaintiffs, in any event, fail to satisfy the prerequisites of Article III standing. *Finally*, Plaintiffs' alternative claim for relief likewise fails, because they cannot state a claim or establish jurisdiction for their allegation that the Special Master violated the Act's requirements for updating Fund Procedures.

Accordingly, the Complaint should be dismissed in its entirety.

# BACKGROUND

## I.    Statutory Background

In 2015, Congress enacted the Justice for United States Victims of State Sponsored Terrorism Act, which, among other things, established the United States Victims of State Sponsored Terrorism Fund.  34 U.S.C. § 20144.  The Fund provides compensation to eligible claimants who hold judgments against state sponsors of terrorism, hostages held in the United States embassy in Iran from 1979 to 1981 and their spouses and children, or the personal representatives of such persons who are deceased.  *Id.* § 20144(c), (d).

***Special Master & Fund Procedures.***  In addition to creating the Fund, the Act mandates that the Attorney General appoint a Special Master to administer compensation from the Fund.  *Id.* § 20144(b).  It further directs the Special Master to "publish in the Federal Register and on a website maintained by the Department of Justice a notice specifying the procedures necessary for United States persons to apply and establish eligibility for payment" and provides that "[such] notice . . . [is] not subject to the requirements of section 553 of Title 5."  *Id.* § 20144(b)(2)(A).

On May 17, 2016, the then-Attorney General appointed Kenneth R. Feinberg, Esq. as the Special Master to administer the Fund with the assistance of Department of Justice ("Department") staff.  *Id.* § 20144(b)(1)(A)–(B).  The Special Master published the required notice of eligibility requirements and application procedures for compensation from the Fund in the Federal Register on July 14, 2016.  Justice for United States Victims of State Sponsored Terrorism Act, 81 Fed. Reg. 45,535 (July 14, 2016) ("Fund Procedures").

The Special Master has the sole statutory authority to determine if claims are eligible for compensation from the Fund.  34 U.S.C. § 20144(c)(1).  To establish an eligible claim under the Act, the claimant must hold a final judgment issued by a United States district court under state or

federal law against a state sponsor of terrorism and arising from an act of international terrorism, for which the foreign state was found not immune under provisions of the Foreign Sovereign Immunities Act ("FSIA"), *id.* § 20144(c)(2)(A), or be a victim of the Iran hostage crisis, *id.* § 20144(c)(2)(B), (C).

Under the Act, payments from the Fund are determined using compensatory judgment amounts for judgment holders and statutorily determined amounts for Iran hostages and their families. *Id.* § 20144(d). The payments are made in pro rata distributions subject to statutory limitations, including a cap of $20 million on an individual's eligible claim and consideration of compensation that claimants have already received from sources other than the Fund. *Id.*

Pursuant to procedures issued by the Special Master, a claimant seeking to establish eligibility for payment from the Fund must submit, among other documents, a copy of the qualifying final judgment, including a list identifying any immediate family member(s) of the claimant also identified in the final judgment. *See* Fund Procedures, 81 Fed. Reg. at 45,537–41. The Special Master, assisted by the Fund's claims administrator and Fund staff, reviews and grants or denies applications for compensation. 34 U.S.C. § 20144(c)(1). All decisions of the Special Master with regard to compensation from the Fund must be made in writing and provided to the Attorney General and each claimant. *Id.* § 20144(b)(3). Such decisions are deemed final and not subject to administrative or judicial review, except as provided for in the Special Master's internal hearing procedures. *Id.*

**The Fairness Act—Appropriations for Lump Sum Catch-Up Payments.** On December 29, 2022, Congress passed the Fairness for 9/11 Families Act (the "Fairness Act"), which amended the Act in several ways. Fairness for 9/11 Families Act, Pub. L. No. 117-328, Div. MM, 136 Stat. 4459 (2022). It first allocated funds for certain 9/11 victims, 34 U.S.C. § 20144(d)(4)(C)(iv), and

3

as relevant here, created a separate appropriation for a reserve fund, from which lump sum catch-up payments would be paid to certain victims of the 1983 Beirut barracks and 1996 Khobar Towers bombings, *id.* § 20144(d)(4)(D)(iv)(III). The Fairness Act further amended the Act to require the Special Master to "update, as necessary as a result of the enactment of [the Fairness Act]," Fund Procedures and other guidance previously issued by the Special Master, and to make any such updates not later than 30 days after such enactment—*i.e.*, by January 28, 2023. *Id.* § 20144(b)(2)(A). The Special Master made no changes to the longstanding application procedures published in the Federal Register but did add a FAQ section on lump sum catch-up payments on the Fund's website. *See* U.S. Gov't Accountability Off., GAO-25-107564, U.S. Victims of State Sponsored Terrorism Fund: 1983 Beirut Barracks and 1996 Khobar Towers Bombing Claimants Due $614 Million, 59 (2024) ("GAO Report"), https://perma.cc/YNW6-JDKD, (citing Dep't of Justice Resp. to Gov't Accountability Off. Draft Report, at 3).

*The Fairness Act—the GAO's Role & Report.* The Fairness Act did not alter the statutory provisions authorizing the Special Master to make eligibility determinations on claimant applications, but it did add new provisions relating to lump sum catch-up payments. In particular, the Fairness Act amended the Act to provide:

> Not later than 30 days after the expiration of the comment period in clause (ii), the Comptroller General of the United States shall submit to the Committee on the Judiciary and the Committee on Appropriations of the Senate, the Committee on the Judiciary and the Committee on Appropriations of the House of Representatives, and the Special Master a report that includes the determination of the Comptroller General on-
>
> > (I) the amount of the proposed lump sum catch-up payment for each 1983 Beirut barracks bombing victim;
> >
> > (II) the amount of the proposed lump sum catch-up payment for each 1996 Khobar Towers bombing victim; and

(III) amount of lump sum catch-up payments described in subclauses (I) and (II).

34 U.S.C § 20144(d)(4)(D)(iii).  The Fairness Act further amended the Act to require the Special Master to "authorize lump sum catch-up payments from the reserve fund established under subclause (I) in amounts equal to the amounts described in subclauses (I) and (II) of clause (iii)," within one year (but not sooner than 90 days) after the date on which the Comptroller General submits the aforementioned report to the appropriate Senate and House committees.  *Id.* § 20144(d)(4)(D)(iv)(II).

On November 1, 2024, the GAO issued its final report.  GAO Report at 1.  The GAO determined that of the 1983 Beirut barracks and 1996 Khobar Towers bombing victims with final judgments awarded before the Fairness Act's enactment (before December 29, 2022), 786 claimants were previously eligible to participate in the Fund.  *Id.* at 17.  And of those 786 previously eligible claimants, 274 of them did not submit applications during the Fairness Act's amended application period of 180 days, *i.e.*, from December 29, 2022, to June 27, 2023.  *Id.* at 15–18; 34 U.S.C. § 20144(c)(3)(1)(ii)(II).  Because those 274 claimants did not submit applications for catch-up payments during the period of December 29, 2022, to June 27, 2023, the GAO concluded that "[t]he Fairness Act does not authorize GAO to include these claimants in the "[GAO's] calculations of lump sum catch-up payments."  GAO Report at 19–20.  *See also id.* at 21 ("[The GAO] could not include these [274] claimants in [its] catch-up payment calculations because [those claimants] did not submit applications during the time frame, which is a requirement under the Fairness Act.").  The GAO further explained that because "Fund officials have stated that the Fund's procedures do not provide for accepting or reviewing additional applications from claimants who previously applied to the Fund and were found eligible," "there is no mechanism to address the advice the Fund provided that may have prevented otherwise

eligible claimants from submitting applications during the statutory application time frame." *Id.*
at 20.  Consequently, the GAO recommended that Congress "amend[] the [Act] to direct the
Special Master to make lump sum catch-up payments to those among the 274 claimants who did
not submit applications during the statutory application time frame . . . ." *Id.*  The GAO then
concluded their findings with the following explanation: "To ensure that the Fund can identify
these claimants and make payments *if the statute is amended*, we are providing the claim
identification numbers and lump sum catch-up payment amounts that we calculated for the 274
claimants to the Special Master with this report." *Id.* (emphasis added).

In compliance with the Act, as amended by the Fairness Act, the Special Master did not
authorize lump sum catch-up payments to the 274 claimants—including Plaintiffs—who did not
submit an application during the 180-day period from December 29, 2022, to June 27, 2023, and
consequently, did not have any proposed payment amounts in the GAO Report.  The Special
Master did, however, authorize lump sum catch-up payments to the 2,081 claimants identified in
the GAO Report as eligible to receive them.  *See generally* Dep't of Justice, Special Master's
Report Regarding Lump Sum Catch-Up Payments to Victims of the 1983 Beirut Barracks
Bombing and 1996 Khobar Towers Bombing, (Mar. 2025), https://perma.cc/L4RU-APA9; *id.* at 3
n.8 (distinguishing the 2,081 claimants for whom the Special Master authorized payments from
the 274 claimants for whom the GAO also calculated payment amounts).

## II.    Procedural Background

On January 31, 2025, Plaintiffs Rusnak and Zook—two veterans who were injured in the
1996 Khobar Towers bombing and submitted complete applications to the Fund prior to the
enactment of the Fairness Act—filed suit against the United States; the Comptroller General, in
his official capacity; the Special Master, in her official capacity; and the Department of Justice.
Complaint ¶ 2, ECF No. 1 ("Compl.").  In addition to seeking injunctive relief to preserve reserve

funds, Plaintiffs ask the Court to (1) "declare that the Fairness Act requires the Special Master to authorize lump sum catch-up payments for each 1983 Beirut barracks bombing victim and 1996 Khobar Towers bombing victim," and (2) "order the Special Master to authorize catch-up payments for Plaintiffs in the amounts computed by the Comptroller General." *Id.* ¶¶ 63–64, 72–73. *See also id.* ¶ 68 (asking the Court to declare that "the Fairness Act does not limit the scope of the Special Master's statutory obligation to authorize catch up payments").

## LEGAL STANDARD

Defendants move to dismiss this case under Federal Rule of Civil Procedure 12(b)(1). Motions brought pursuant to Rule 12(b)(1) challenge whether the district court has jurisdiction over the action. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and a party claiming subject-matter jurisdiction bears the burden of demonstrating that such jurisdiction exists, *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). When a defendant raises an issue of subject-matter jurisdiction under Rule 12(b)(1), the Court must resolve the jurisdictional issue before it proceeds to the merits of the plaintiff's claims. *See, e.g., Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). "When reviewing a challenge pursuant to Rule 12(b)(1), the Court may consider documents outside the pleadings to assure itself that it has jurisdiction." *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003).

Defendants also move for dismissal under Federal Rule of Civil Procedure 12(b)(6) as to Plaintiffs' claims involving the Special Master's strict adherence to statutory commands. To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In assessing a Rule 12(b)(6) motion, the Court must consider all well-pled allegations in a complaint as true and view the complaint in the light most

favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994). However, these principles do not apply to "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

<u>**ARGUMENT**</u>

Plaintiffs assert a variety of causes of action for declaratory and injunctive relief under the APA, the Declaratory Judgment Act, and the Mandamus Act. Regardless of those purported (and arguably duplicative) causes of action, Plaintiffs, at bottom, seek to be awarded increased compensation from the Fund. Indeed, while Plaintiffs devote significant portions of their Complaint to describing a disagreement between various government entities, they nevertheless concede that those merits-related disputes are ultimately irrelevant to the relief they seek here. *See* Compl. ¶ 11. Defendants agree. Plaintiffs' merits allegations are merely a distraction, and the Court should dismiss the Complaint because of its facial defects—namely, (1) the Comptroller General, in his official capacity, is not a proper defendant in this action; (2) Plaintiffs fail to allege any agency action unlawfully withheld; (3) the Court lacks subject-matter jurisdiction over Plaintiffs' claims; and (4) Plaintiffs fail to allege, in the alternative, that the Special Master did not comply with the Act.

Accordingly, the Complaint must be dismissed in its entirety.

## I.    **Dismissal of the Comptroller General Is Warranted**

Plaintiffs' claims against the Comptroller General are predicated on a single allegation: the GAO erred in concluding that the 274 claimants (including Plaintiffs) needed to resubmit applications to be eligible to receive lump sum catch-up payments. *See, e.g.*, Compl. ¶¶ 43, 62,

8

67.  Whether brought pursuant to the APA, the Declaratory Judgment Act, or the Mandamus Act, those claims against the Comptroller (and the GAO) fail as a matter of law.[1]

Plaintiffs cannot state an APA claim against the GAO, because the "GAO—an entity within the legislative branch—is not an agency under the APA." *Pond Constructors, Inc. v. United States Gov't Accountability Off.*, 2018 WL 3528309, at *1 (D.D.C. May 30, 2018).  "APA exemption for 'the Congress' mean[s] the entire legislative branch," and thus, the APA "does not waive sovereign immunity for suits against [the] GAO." *Id.* (citing *Washington Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994)).  *See also Chen v. Gen. Acct. Off.*, 821 F.2d 732, 737 n.6 (D.C. Cir. 1987) (concluding that the GAO was "exempt from many APA provisions" because it "is generally recognized as a part of the legislative branch"); *Coll. Sports Council v. GAO*, 421 F. Supp. 2d 59, 61, 66 (D.D.C. 2006) ("logically conclud[ing] that the GAO is not an agency for the purposes of the APA" because it "is 'an independent agency within the Legislative Branch'" (quoting *Bowsher v. Merck & Co.*, 460 U.S. 824, 844 (1983)).

Plaintiffs cannot overcome this jurisdictional bar through the Declaratory Judgment Act, which, in the absence of any cognizable statutory or common law claim, does not supply an independent cause of action.  *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) ("It is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction." (quotations and citations omitted)).  Here, the statute does not "state that a private entity may bring suit to enforce [the Act's] provisions." *Coll. Sports*, 421 F. Supp. 2d at 65; *see generally* 34 US.C. § 20144.  Rather, the Act merely directs the Comptroller General to "conduct

---

[1] Plaintiffs brought suit against the Comptroller General of the United States in his official capacity as the agency head of the GAO.  "A lawsuit against a government official in his official capacity is an action against the governmental entity of which the official is an agent." *Wilburn v. Robinson*, 480 F.3d 1140, 1148 (D.C. Cir. 2007).

an audit" and submit "a report" to the Special Master and certain committees within Congress. 34 U.S.C. § 20144(d)(4)(D)(i)–(iii). The absence of any "rights-creating language" in the Act thus precludes any declaratory relief. *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001).

Plaintiffs' claims against the GAO under the Mandamus Act fare no better. Although "[n]o separate waiver of sovereign immunity is required to seek a writ of mandamus," the writ "is available only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)). Mandamus is a "drastic" remedy; "it is available only in 'extraordinary situations'; it is hardly ever granted; those invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to relief; and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005).

Plaintiffs come nowhere close to establishing the availability of mandamus as to the GAO.[2] The statute directed the GAO to conduct an audit and produce a report to Congress relating to catch-up funds, 34 US.C. § 20144(d)(4)(D)(i)–(iii), and the GAO did just that, *see generally* GAO Report. Consequently, it would be "manifestly unnecessary to compel [the GAO] to act on [Plaintiffs' mandamus] claim, inasmuch as [the GAO] rendered its [report]" over six months ago. *Gray v. Off. of Pers. Mgmt.*, 771 F.2d 1504, 1514 (D.C. Cir. 1985). *See also Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20, 42 (D.D.C. 2002) (recognizing that a mandamus claim is moot where requested duty was subsequently performed). But even if Plaintiffs' claim

---

[2] To be sure, it is not clear from the face of the Complaint as to whether Plaintiffs seek mandamus relief against the GAO; for while all counts in the Complaint include "Defendants," the factual allegations seeking the Court to compel agency action are directed solely at the Special Master. *See, e.g.*, Compl. ¶¶ 64, 73, 77.

against the GAO were not moot, Plaintiffs' own allegations—that the "GAO proffered an (incorrect) *interpretation* of the Fairness Act's audit-and-publish provision," Compl. ¶ 66 (emphasis added)—confirm that the GAO's role was not merely "ministerial" or nondiscretionary, a prerequisite for mandamus relief. *See, e.g.*, *Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476, 1479 (D.C. Cir. 1995) ("A court may properly issue a writ of mandamus only if the duty to be performed is ministerial and the obligation to act peremptory and clearly defined.  The law must not only authorize the demanded action, but require it; the duty must be clear and undisputable."); *United States ex rel. Alaska Smokeless Coal Co. v. Lane*, 250 U.S. 549, 555 (1919) ("But where there is discretion . . . even though its conclusion be disputable, it is impregnable to mandamus."); *Fornaro*, 416 F.3d at 69 (a writ of mandamus "compel[s] an official to perform a duty *required* in his official capacity" (emphasis added)).

Accordingly, the Court should dismiss the Comptroller General (and all claims against him) as a defendant in this matter.

## II.    Plaintiffs Fail to State a Claim Against the Special Master

Plaintiffs seek to compel the Special Master to authorize additional lump sum catch-up payments under the Act.  *See* Compl. ¶¶ 63–64, 70–74.  But they have not alleged any agency action unlawfully withheld under the APA, and in any event, the Special Master lacks discretion to take the action Plaintiffs seek.  Those fatal defects, coupled with Plaintiffs' failure to challenge the underlying statute that directs the Special Master's action, demands dismissal of Counts I and III.[3]

---

[3] Plaintiffs name the United States and the United States Department of Justice as Defendants but allege no actions by either of these entities relevant to the challenged conduct on the part of the GAO or the Special Master.  Similarly, none of the relief sought in the Complaint would issue from either of these Defendants. To the extent the Department of Justice is named as a Defendant because the Special Master is an appointee of the Attorney General, both the authority to take the

**A.**  Plaintiffs contend that the Special Master unlawfully withheld lump sum catch-up payments from them and that those payments can be compelled.  *See* Compl. ¶¶ 61, 64, 70–73. But "the only action a court may compel an agency to take under § 706(1) is a discrete action that the agency has a duty to perform."  *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018) (quoting *Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 63–64 (2004)).  That "legal duty must be 'ministerial or nondiscretionary' and must amount to 'a specific, unequivocal command.'"  *Id.*[4]

Here, Plaintiffs allege that the "Fairness Act . . . mandated that the Special Master 'shall authorize' lump sum catch-up payments from a reserve fund in amounts set forth in the Report of the Comptroller General," Compl. ¶ 29, and that the GAO Report "included proposed lump sum catch-up payment amounts for each of the Plaintiffs," *id.* ¶ 31.  Thus, in Plaintiffs' view, the Special Master violated the Fairness Act, because she failed "to take the ministerial step of allocating payment to the Plaintiffs in the amounts determined by the Comptroller General."  *Id.* ¶ 40.

Plaintiffs' allegations, however, elide one critical fact: the Comptroller General did not "propose" any authorized lump sum catch-up payments as to Plaintiffs, or any of the other 272 similarly situated claimants who failed to submit a separate application following the enactment of the Fairness Act.  To the contrary, and most critically, the GAO Report explicitly states that

---

challenged actions and the relief requested is statutorily endowed in the Special Master and runs through her.  Therefore, these entities are all in privity with one another, and the claims against them must all be dismissed for the reasons the claims against the Special Master must be dismissed, *see infra*.

[4] These arguments apply with equal force to the extent Plaintiffs seek the same relief pursuant to the Declaratory Judgment Act and the Mandamus Act.  In other words, the failure to allege a viable APA claim for agency action unlawfully withheld likewise dooms Plaintiffs' requests for declaratory and mandamus relief.  *See supra* § I.  *See also Jud. Watch*, 219 F. Supp. 2d at 42 ("When a federal official has an obligation to perform a ministerial or non-discretionary duty, a federal district court may issue a writ of mandamus under § 1361 to compel that officer to fulfill the obligation.").

"[t]he Fairness Act does not authorize GAO to include these [274] claimants"—including Plaintiffs—"in [the GAO's] calculations of lump sum catch-up payments . . . ." GAO Report at 20.[5]  *See also id.* at 21 ("[The GAO] could not include these [274] claimants in [its] catch-up payment calculations because [those claimants] "did not submit applications during the time frame, which is a requirement under the Fairness Act.").  *See also id.* at 20 ("Amending the [Act] to direct the Special Master to make lump sum catch-up payments to . . . the 274 claimants . . . would provide a mechanism for them to receive lump sum catch-up payments.").

The Special Master does not have (as Plaintiffs contend) a "ministerial and nondiscretionary" duty to pay out any amounts that happen to be identified in any context in the GAO Report.  Indeed, there is a "specific, unequivocal command" in the Act to authorize only payments for amounts that the GAO has proposed; meaning, the Special Master could not authorize any payments that the GAO determined it would not propose absent congressional amendment.  *Zinke*, 892 F.3d at 1241; *Jud. Watch*, 219 F. Supp. 2d at 42.  That is because the Act instructs the Special Master to authorize "the amount of the *proposed* lump sum catch-up payment for each 1996 Khobar Towers bombing victim" as "determin[ed]" by the Comptroller General— nothing more, nothing less.  34 U.S.C. § 20144(d)(4)(D)(iii)(II) (emphasis added); *see also id.* § 20144(d)(4)(D)(iv)(II).

Plaintiffs' reliance on the fact that the GAO included theoretical payment calculations for 274 claimants is of no moment here.  Those hypothetical calculations were included, as the GAO made clear, to ensure the good administration of the Fund in the event "the statute is amended."

---

[5] In addition to the facts alleged in the complaint, a court may consider "documents attached as exhibits or incorporated by reference in the complaint or documents upon which the plaintiff's complaint necessarily relies."  *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 70 (D.D.C. 2016) (internal citation omitted).

GAO Report at 20. *See also id.* ("To ensure that the Fund can identify these claimants and make payments *if the statute is amended*, we are providing the claim identification numbers and lump sum catch-up payment amounts that we calculated for the 274 claimants to the Special Master with this report." (emphasis added)). Plaintiffs concede as much. *See* Compl. ¶ 7 (conceding that Plaintiffs' potential payment amounts were included only in the event of a statutory amendment). And the Court, therefore, may not second-guess the Comptroller General's unequivocal determination to withhold lump sum catch-up payments to Plaintiffs, or impute different authority to the Special Master that Congress did not provide.

**B.** For the same reason, Plaintiffs likewise fail to state a claim because they have not raised any challenge to the Act itself. The Act dictates that the Special Master make lump sum catch-up payments only in the amounts and to the individuals proposed in the GAO Report—providing the Special Master with no discretion as to alter or adjust the amount of those payments. 34 U.S.C. § 20144(d)(4)(D)(iii)(II); *id.* § 20144(d)(4)(D)(iv)(II).[6] Thus, Plaintiffs cannot plausibly allege that the Special Master acted contrary to or in excess of statutory authority, when she did exactly what the Act requires. *See, e.g.*, *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("an agency literally has no power to act . . . unless and until Congress confers power upon it."). *Def. Arlington v. U.S. Dep't of Def*, 2023 WL 8600567, at *12 (D.D.C. Dec. 12, 2023) (where defendants "do[] not have discretion," "the APA is not the appropriate vehicle for review"). Plaintiffs have not challenged any aspect of that statutory command, and accordingly, fail to state a claim against the Special Master as a matter of law.

---

[6] By contrast, Congress knows how to provide the Special Master with broader discretion when it wants to do so. For example, Congress authorized that the Fund be "managed and invested" in the same manner as a trust fund under 26 U.S.C. § 9602. *See* 34 U.S.C. § 20144(b)(1)(3). These provisions stand in stark contrast to Congress's nondiscretionary directive for the Special Master to provide payments only in the proposed amounts set forth in the GAO Report.

### III.    The Court Lacks Jurisdiction to Review the Decisions of the Special Master and the Prerequisite Findings of the GAO

Counts I and III of Plaintiffs' Complaint suffer from yet another fatal defect, as they run headlong into clear jurisdictional bars to judicial review.  *First*, Plaintiffs' claims against the Special Master—which are claims of wrongful denial of compensation from the Fund, *see, e.g.*, Compl. ¶ 40, 63–63, 70–74—are expressly barred under the Act itself.  *Second*, to the extent that Plaintiffs allege that their claims hinge on the GAO's purported legal error, that too fails.  The GAO's interpretation of the Fairness Act is nonreviewable because it was indispensable to a separate nonreviewable decision by the Special Master.  Finally, Plaintiffs cannot satisfy Article III standing, because under either construction of their claims (and prospective relief), they fail to satisfy the prerequisites of injury-in-fact or redressability.  These foregoing jurisdictional defects warrant dismissal of Counts I and III of the Complaint.

### A.    The Special Master's Decisions with Regard to Compensation from the Fund Are Not Subject to Judicial Review

When Congress bars judicial review of administrative action, courts lack jurisdiction to hear claims challenging the agency's conduct.  *See Mercy Hosp., Inc. v. Azar*, 891 F.3d 1062, 1071 (D.C. Cir. 2018).  Likewise, when APA review is unavailable due to statutory preclusion, the APA's waiver of sovereign immunity does not apply, and thus, no jurisdiction exists to entertain the challenge.  *See, e.g.*, *Brownback v. King*, 592 U.S. 209, 217–18 (2021); *Washington v. U.S. Dep't of State*, 996 F.3d 552, 565 (9th Cir. 2021).  Here, the Act falls squarely within the APA's carve-out for nonreviewable claims, and thus, the Court lacks jurisdiction over Plaintiffs' claims against the Special Master.  *See* 5 U.S.C. § 701(a)(1) (a claim may not be brought under the APA "to the extent that . . . statutes preclude judicial review").

**1.**    Although courts presume that Congress ordinarily "intends judicial review of administrative action," that presumption is "rebuttable by a clear statement of congressional intent

to preclude review." *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017) (quoting *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986)).  Congress therefore is free to leave district courts without jurisdiction to review particular claims against an agency.  *See Ralpho v. Bell*, 569 F.2d 607, 622, 622 n.101 (D.C. Cir. 1977) (nothing "prevent[s] [Congress] from shielding even the most patent deviation from the statutory scheme from judicial redress where the Constitution is in no wise implicated").  "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."  *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984).

Here, congressional preclusion of judicial review is plainly evident.  The Act states in no uncertain terms that "[a]ll decisions made by the Special Master with regard to compensation from the Fund" are "not subject to administrative or judicial review."  34 U.S.C. § 20144(b)(3).  That necessarily includes the Special Master's distribution of lump sum catch-up payments to individuals possessing judgments related to the Khobar Towers bombing; because while those payment authorizations were executed without discretion, the Special Master nonetheless made a decision about the availability (or unavailability) of certain types of compensation to certain claimants, including Plaintiffs.  Such decisions are facially decisions made by the Special Master "with regard to compensation from the Fund" and thus expressly precluded from judicial review. 34 U.S.C. § 20144(b)(3).

**2.**    Indeed, recent decisions by courts in this District, as they relate to the jurisdiction-stripping provision in § 20144, compel the same result, as they focus on the nature of the relief requested, not the characterization of the claims by plaintiffs.  *See, e.g.*, *O'Neill v. Garland*, 2022 WL 17415057, at *5 (D.D.C. Dec. 5, 2022) ("when the text of a statute precludes

judicial review, the Court must look beyond [p]laintiffs' characterization of their challenge and view their claim through the perspective of the relief sought").  In this case, the Court need not even parse the true nature of Plaintiffs' claims, because it is clear on the face of the Complaint that Plaintiffs seek (1) reconsideration of the Special Master's individual compensation decisions, Compl. ¶¶ 63, 72, and (2) individual payments from the Fund as a result, *id.* ¶¶ 64, 73.  That is, the specific relief Plaintiffs seek makes clear that their claims are predicated on challenging (and overturning) the Special Master's decisions regarding "the amount of compensation from the Fund."  34 U.S.C. § 20144(b)(3).  Such relief is clearly impermissible, as Congress expressly precluded such claims from being subject to judicial review.  *See id.* ("All decisions made by the Special Master with regard to compensation from the Fund" are "not subject to administrative or judicial review."); *Braun v. United States*, 531 F. Supp. 3d 130, 132 (D.D.C. 2021) (Special Master's "individual determinations regarding eligibility and entitlement" "are expressly shielded from judicial review"), *aff'd*, 31 F.4th 793 (D.C. Cir. 2022).

But even if Plaintiffs attempt to disavow that specific relief, Judge Boasberg's decision in *O'Neill* underscores that Plaintiffs' attempt to cast their claims as programmatic in nature is of no import.  *See* Compl. ¶¶ 61–62, 67 (challenging the Special Master's decision to abide by the GAO's interpretation of the Fairness Act).  In *O'Neill*, the plaintiffs likewise insisted that they were not challenging an individual eligibility determination but making "a broad programmatic" challenge to the Special Master's determination.  2022 WL 17415057, at *5 (citation omitted).  The court, however, rejected that distinction, concluding that "the end result and the relief [plaintiffs] [sought] is the same as if a single [] claimant had raised this issue with respect to her particular claim: to draw more money from the Fund."  *Id.* at *6.  In other words, no matter how the claims or the relief are characterized by Plaintiffs, this case, like *O'Neill*, "boils down to a dispute over the

appropriate amount of compensation from the [F]und." *Id.*; *see also id.* at *5 (applying the Supreme Court's approach in *Heckler v. Ringer*, 466 U.S. 602 (1984), to look beyond the characterization of the claims in the complaint to the actual import of a decision).

Courts outside this Circuit confirm the breadth of this jurisdictional bar. In *Hekmati v. United States*, the Court of Federal Claims confronted the same jurisdictional question under the Act. 153 Fed. Cl. 800 (Fed. Cl. 2021), *aff'd*, 51 F.4th 1066 (Fed. Cir. 2022). And while the plaintiff there argued that the Special Master lacked the authority to reconsider his previously granted claim, the *Hekmati* court, like the *O'Neill* court, looked beyond such characterizations and dismissed the suit on jurisdictional grounds, finding that the plaintiff fundamentally sought impermissible judicial review of the Special Master's determination regarding the plaintiff's eligibility for compensation from the Fund. *Id.* at 812.

The Second Circuit's treatment of a similar statutory scheme, the September 11th Victim Compensation Fund ("VCF")—in which the VCF's jurisdiction-stripping provision mirrors the Act's jurisdiction-stripping provision at issue here—is likewise instructive. In *Schneider v. Feinberg*, the Second Circuit considered a challenge to the "presumed award process" articulated in regulations promulgated by the VCF's Special Master. 345 F.3d 135, 138 (2d Cir. 2003). There, the Second Circuit, in affirming the district court's dismissal, concluded that plaintiffs effectively sought to challenge the VCF Special Master's "award" determinations, which, as here, were expressly precluded from judicial review. *Id.* at 145 ("Congress has confided each award to the sealed box of a Special Master's mind . . . and has placed the result beyond the reach of review."); *Compare* Air Transportation Safety and System Stabilization Act, Pub. L. No. 107-42, § 405(b)(3), 115 Stat. 230 (2001) ("Such a determination [by the Special Master] shall be final and not subject

to judicial review."), *with* 34 U.S.C. § 20144(b)(3)–(4) ("All decisions made by the Special Master with regard to compensation from the Fund" are "not subject to administrative or judicial review.").

Likewise, in *Heckler*, individuals who had been denied reimbursement under the Medicare Act for a particular form of surgery sought review of the Secretary's policy that precluded reimbursement. 466 U.S. at 610–11. Noting that the individuals requested a declaration that their expenses were reimbursable under the Medicare Act, the Supreme Court held that respondents' challenges to the Secretary's procedures were "at bottom, a claim that they should be paid for their . . . surgery," and therefore precluded from judicial review. *Id.* at 614. *Ringer* ultimately confirms that programmatic challenges are in fact "inextricably intertwined" with denial of payment and thus precluded from judicial review. *Id.*

*          *          *

*O'Neill*, *Braun*, *Hekmati*, *Schneider*, and *Heckler*, independently and collectively point to an applicable jurisdictional bar. In each of those cases, the claimants sought to evade preclusion of judicial review by bringing challenges that they contended reached beyond individual compensation decisions. Plaintiffs in this case do not even do that much; they explicitly ask the Court to reverse individual compensation decisions notwithstanding Congress's clear jurisdictional bar. Such claims—whether alleged individually or programmatically—are clearly outside of this Court's subject-matter jurisdiction and should be dismissed as a matter of law.

### B.    Plaintiffs' Challenge to the GAO's Interpretation of the Fairness Act Is Likewise Precluded

Plaintiffs may contend (despite allegations to the contrary) that they do not contest the Special Master's individual compensation decisions, *see* Compl. ¶ 13, but instead take issue with the underlying legal conclusion made by the Comptroller General, *see id.*, Counts I–II. Plaintiffs'

Complaint is not actually limited in that way.  *See supra* § III.A.  But even if it were, binding precedent in this Circuit would still bar such claims.

The D.C. Circuit has made clear that courts cannot "review a decision that [i]s 'indispensable' or 'integral' to, or 'inextricably intertwined' with, the unreviewable agency action." *Fla. Health Scis. Ctr. Inc. v. Sec'y of Health & Hum. Servs.*, 830 F.3d 515, 519 (D.C. Cir. 2016) (quoting *Texas Alliance for Home Care Servs. v. Sebelius*, 681 F.3d 402, 409–11 (D.C. Cir. 2012)). That means, even if Plaintiffs' challenge rested solely on the Comptroller General's conclusion that separate applications were required, that interpretation (whether improper or not) is nonetheless unreviewable because it was "indispensable" to the Special Master's individual compensation decisions, which in turn, are explicitly precluded from judicial review.  *See supra* § III.A.  Indeed, Plaintiffs' allegations concede this conceit.  They allege, on the one hand, that they are harmed by the deprivation of payments from the Fund, *see, e.g.*, Compl. ¶¶ 40, 42, 61, 70–71, yet the relief they seek—a declaration ordering the Special Master to authorize catch-up payments for Plaintiffs, *id.* ¶¶ 63–64, 72–73—ultimately asks this Court to undo the GAO's underlying legal interpretation of the Act.  Plaintiffs cannot meaningfully contend that the GAO's legal determination is reviewable, when they concede that that interpretation deprived them of individual compensation from the Fund, the latter of which is nonreviewable.

### C.    Plaintiffs Cannot Establish Standing

Finally, to the extent Plaintiffs argue that they are seeking something other than relief from their individual compensation decisions, their position creates a jurisdictional double-bind. "Absent any one" of the three elements of the "irreducible constitutional minimum" of standing— "injury-in-fact, traceability, and redressability"—federal courts lack subject-matter jurisdiction. *Williams v. Lew*, 819 F.3d 466, 475 (D.C. Cir. 2016) (citation omitted).

Here, the only harm Plaintiffs have alleged is the denial of individual lump sum catch-up payments. *See, e.g.*, Compl. ¶¶ 40, 42, 63–63, 72–73. Thus, to the extent Plaintiffs contend that their individual compensation decisions are not the harm they seek to remedy, they have failed to plausibly allege any injury-in-fact, and their claims must be dismissed for lack of standing. If instead, Plaintiffs rely on the alleged harms related to their individual compensation decisions, *see* Compl. ¶¶ 40, 63–63, 70–74, they have failed to plausibly allege redressability because the Court cannot review those decisions, *see supra* § III.A.

## IV. Plaintiffs' Alternative Claim Against the Special Master Fails As a Matter of Law

To the extent the Court concludes that the Act requires the submission of "duplicative" applications for lump sum catch-up payments, Plaintiffs argue, in the alternative, that the Special Master was required to modify Fund Procedures to allow for the submission and acceptance of such applications (Count IV). Compl. ¶¶ 75, 77. As an initial matter, the Court should not reach this alternative claim because review of the GAO's legal interpretation is precluded for the reasons set forth above. *See supra* § III.B. In any event, Plaintiffs' alternative argument fails as a matter of law.

There simply can be no APA relief under the Act, because the statute mandates a clear deadline for when any changes to Fund Procedures relating to lump sum catch-up payments may be implemented. Specifically, the Act provides that within "30 days after the date of enactment of the Fairness for 9/11 Families Act," *i.e.*, by January 28, 2023, "the Special Master shall update, *as necessary* as a result of the enactment of such Act, such procedures and other guidance previously issued by the Special Master." 34 U.S.C. § 20144(b)(2)(A) (emphasis added). This provision grants the Special Master discretion to make changes to the Fund Procedures in the manner she deems necessary upon interpretation of the Fairness Act, but imposes a nondiscretionary duty to do so, if at all, within 30 days. That deadline has come and gone. And the Special Master retains

21

no authority at this stage to amend the Fund Procedures and guidance on the basis of the Fairness Act. *See La. Pub. Serv. Comm'n*, 476 U.S. at 374 ("an agency literally has no power to act . . . unless and until Congress confers power upon it."). Nor does the GAO's after-the-fact determination that the statute be amended to allow for "duplicative" applications, or the Special Master's compliance with the statute as it presently exists, authorize this Court to order the Special Master to contravene the clear statutory deadline for any lump sum catch-up related amendments to Fund Procedures.

At bottom, there is simply no mandatory duty that permits an APA claim for agency action unlawfully withheld where the amendment of procedures was discretionary. *See supra* § II. And because the Special Master no longer has the authority to make such amendments, pursuant to the statutory provision that Plaintiffs do not challenge, no order of this Court can provide redress, and thus, Plaintiffs lack standing to bring this claim. *See supra* § III.C.

Plaintiffs' request for mandamus relief is even further afield. *See* Compl. ¶ 77 (requesting that "the Court order the Special Master to issue such procedures and accept additional applications for catch-up payments"). Nothing in the statute, as it relates to the modification of the Fund Procedures, creates a "ministerial duty" that is "so plainly prescribed as to be free from doubt and equivalent to a positive command." *Wilbur v. United States*, 281 U.S. 206, 218–19 (1930). *See also In re Cheney*, 406 F.3d at 729 ("[T]hose invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to relief; and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary."). To the contrary, the statute makes clear that the Special Master shall update such Fund Procedures "*as necessary*." 34 U.S.C. § 20144(b)(2)(A) (emphasis added). Meaning, there was plainly discretion in the Special Master's ability to amend Fund Procedures prior to the statutory deadline of January 28, 2023, thus

precluding mandamus relief altogether. *Wilber*, 281 U.S. at 218–19 ("[W]here the duty is not thus plainly prescribed, but depends on a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus."). *See also Fornaro*, 416 F.3d at 69 (a writ of mandamus "compel[s] an official to perform a duty *required* in his official capacity" (emphasis added)).

## V.    The Parties Have Already Stipulated to Preservation of Funds

Because the lump sum catch-up payment reserve fund may be terminated after the Special Master disperses all lump sum catch-up payments, Plaintiffs separately seek injunctive relief to preserve the lump sum catch-up payments that would be allocated to them if they were to prevail in this litigation.  Compl. ¶¶ 80–82.  On April 14, 2025, the parties, in an effort to stave off preliminary-injunction briefing, entered into a joint stipulation whereby Defendants stated that they would "ensure that amounts sufficient to meet the payment amounts which Plaintiffs seek through this lawsuit will be held in reserve for the duration of the litigation before this Court."  Jt. Stipulation, at 3, ECF No. 15.  Defendants further committed to giving "Plaintiffs at least 21-days' advance notice before taking any action that would leave less than the amount which Plaintiffs seek in this lawsuit remaining available for payment to Plaintiffs."  *Id.*  In light of the parties' joint stipulation, there is no need for the Court issue an injunction to preserve the funds pending the resolution of the litigation before this Court.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

Dated: May 14, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Sarah M. Suwanda*
SARAH M. SUWANDA
KERI L. BERMAN
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 305-3196
Email: sarah.m.suwanda@usdoj.gov

*Counsel for Defendants*