# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELVIS RUSNAK, *et al.*,<br><br>   *Plaintiffs*,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, *et al.*,<br><br>   *Defendants*. | Case No. 25-cv-292-LLA |
| GLENN CHRISTIE, *et al.*,<br><br>   *Plaintiffs*,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, *et al.*,<br><br>   *Defendants*. | Case No. 25-cv-932-LLA |

## <u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 2

I.     Statutory Background ............................................................................... 2

II.    Procedural Background............................................................................ 7

LEGAL STANDARD ................................................................................................. 7

ARGUMENT ............................................................................................................. 8

I.     All Claims Against the Comptroller General Must Be Dismissed ................................... 9

II.    Plaintiffs Fail to State a Claim Against the Special Master ................................. 12

III.   The Court Lacks Jurisdiction to Review the Decisions of the Special Master ................ 16

       A.     The Special Master's Decisions with Regard to Compensation from the
              Fund Are Not Subject to Judicial Review .............................................. 16

       B.     Plaintiffs Cannot Establish Standing .................................................... 20

IV.    Plaintiffs' Alternative Claim Against the Special Master Fails As a Matter of Law ........ 21

V.     The Parties Have Already Stipulated to Preservation of Funds ............................... 23

CONCLUSION............................................................................................................ 24

## TABLE OF AUTHORITIES

### Cases

*Albright v. Oliver*,
    510 U.S. 266 (1994) .............................................................................................................. 8

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ............................................................................................................ 10

*Ali v. Rumsfeld*,
    649 F.3d 762 (D.C. Cir. 2011) ........................................................................................... 10

*Al-Owhali v. Ashcroft*,
    279 F. Supp. 2d 13 (D.D.C. 2003) ....................................................................................... 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................. 8

*Beberman v. Blinken*,
    61 F.4th 978 (D.C. Cir. 2023) ............................................................................................ 22

*Block v. Cmty. Nutrition Inst.*,
    467 U.S. 340 (1984) ............................................................................................................ 17

*Bowen v. Mich. Acad. of Fam. Physicians*,
    476 U.S. 667 (1986) ............................................................................................................ 16

*Bowsher v. Merck & Co.*,
    460 U.S. 824 (1983) ............................................................................................................ 10

*\*Braun v. United States*,
    531 F. Supp. 3d 130 (D.D.C. 2021), *aff'd*, 31 F.4th 793 (D.C. Cir. 2022) .............................. 18

*Brownback v. King*,
    592 U.S. 209 (2021) ............................................................................................................ 16

*Chen v. Gen. Acct. Off.*,
    821 F.2d 732 (D.C. Cir. 1987) ........................................................................................... 10

*Coll. Sports Council v. GAO*,
    421 F. Supp. 2d 59 (D.D.C. 2006) ..................................................................................... 10

*Def. Arlington v. U.S. Dep't of Def*,
    Nos. 23-cv-441, 23-cv-2094, 2023 WL 8600567 (D.D.C. Dec. 12, 2023) ........................... 15

*Fornaro v. James*,
    416 F.3d 63 (D.C. Cir. 2005)........................................................................................11, 23

*Gray v. Off. of Pers. Mgmt.*,
    771 F.2d 1504 (D.C. Cir. 1985)............................................................................... 12

*Greer v. Bd. of Trs. Of the Univ. of the Dist. of Columbia*,
    113 F. Supp. 3d 297 (D.D.C. 2015) ....................................................................... 14

*Heckler v. Ringer*,
    466 U.S. 602 (1984).......................................................................................... 19, 20

*Hekmati v. United States*,
    153 Fed. Cl. 800 (2021), *aff'd*, 51 F.4th 1066 (Fed. Cir. 2022)................................. 19

*In re Cheney*,
    406 F.3d 723 (D.C. Cir. 2005)..............................................................................11, 22

*Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*,
    219 F. Supp. 2d 20 (D.D.C. 2002) ............................................................... 12, 13, 14

*Khadr v. United States*,
    529 F.3d 1112 (D.C. Cir. 2008) .............................................................................. 8

*Knapp Med. Ctr. v. Hargan*,
    875 F.3d 1125 (D.C. Cir. 2017) .............................................................................. 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ................................................................................................. 8

*La. Pub. Serv. Comm'n v. FCC*,
    476 U.S. 355 (1986) ................................................................................................ 15

*Leopold v. Manger*,
    102 F.4th 491 (D.C. Cir. 2024) ........................................................................10, 11

*Mercy Hosp., Inc. v. Azar*,
    891 F.3d 1062 (D.C. Cir. 2018).............................................................................. 16

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) .................................................................................................. 13

*O'Neill v. Garland*,
    No. 21-cv-1288(JEB), 2022 WL 17415057 (D.D.C. Dec. 5, 2022) ............................ 17, 18, 19

*Papasan v. Allain*,
478 U.S. 265 (1986)................................................................................................ 8

*Pond Constructors, Inc. v. GAO*,
17-0881(DLF), 2018 WL 3528309 (D.D.C. May 30, 2018)................................ 9, 10

*Power v. Barnhart*,
292 F.3d 781 (D.C. Cir. 2002)................................................................................11

*Ralpho v. Bell*,
569 F.2d 607 (D.C. Cir. 1977)............................................................................... 17

*Schneider v. Feinberg*,
345 F.3d 135 (2d Cir. 2003) .................................................................................. 19

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
549 U.S. 422 (2007)................................................................................................ 8

*W. Org. of Res. Councils v. Zinke*,
892 F.3d 1234 (D.C. Cir. 2018)................................................................... 12, 13, 14

*Wash. Legal Found. v. U.S. Sentencing Comm'n*,
17 F.3d 1446 (D.C. Cir. 1994)............................................................................... 10

*Washington v. U.S. Dep't of State*,
996 F.3d 552 (9th Cir. 2021)................................................................................. 16

*Wilbur v. United States ex rel. Kadrie*,
281 U.S. 206 (1930)........................................................................................... 22, 23

*Wilburn v. Robinson*,
480 F.3d 1140 (D.C. Cir. 2007)............................................................................... 9

*Williams v. Lew*,
819 F.3d 466 (D.C. Cir. 2016)............................................................................... 20

## **Statutes**

5 U.S.C. § 701 ....................................................................................................... 16

26 U.S.C. § 9602 ................................................................................................... 15

*34 U.S.C. § 20144.......................................................................................... *passim*

Pub. L. No. 107-42, 115 Stat. 230 (2001)............................................................. 19

Pub. L. No. 114-113, 129 Stat. 2242 (2015) .......................................................... 2

Pub. L. No. 117-328, 136 Stat. 4459 (2022) ..................................................................... 4

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..................................................................... 7, 8

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 8

**Regulations**

81 Fed. Reg. 45,535 (July 14, 2016) ........................................................................... 3

**Other Authorities**

Dep't of Justice, Special Master's Report Regarding Lump Sum Catch-Up Payments to Victims
    of the 1983 Beirut Barracks Bombing and 1996 Khobar Towers Bombing, (Mar. 2025),
    https://perma.cc/L4RU-APA9 ................................................................................ 6, 7

*U.S. Gov't Accountability Off., GAO-25-107564, U.S. Victims of State Sponsored Terrorism
    Fund: 1983 Beirut Barracks and 1996 Khobar Towers Bombing Claimants Due
    $614 Million (2024) ("GAO Report"), https://perma.cc/5SFM-AM8X .......................... *passim*

## INTRODUCTION

Plaintiffs—veterans of the United States Armed Forces who were injured in the 1996 Khobar Towers bombing and who seek compensation from the United States Victims of State Sponsored Terrorism Fund (the "Fund")—bring two nearly identical lawsuits against Defendants to remedy what they view as an inter-governmental dispute over the issuance of additional lump sum catch-up payments pursuant to the Justice for United States Victims of State Sponsored Terrorism Act (the "Act"). Those purported disputes among Defendants, however, are ultimately irrelevant to the threshold issues that require dismissal of the Complaints altogether.

*First*, Plaintiffs' claims against the Comptroller General, in his official capacity as the head of the Government Accountability Office (the "GAO"), must be dismissed because the GAO is not a proper defendant under the Administrative Procedure Act (the "APA"), the Declaratory Judgment Act, or the Mandamus Act. *Second*, Plaintiffs fail to state a claim as a matter of law as to the remaining Defendants,[1] because the Special Master authorized lump sum catch-up payments in accordance with the proposed sums identified in the congressional report issued by the GAO, as mandated by statute. *Third*, the Court lacks subject-matter jurisdiction to consider Plaintiffs' claims against the Special Master, as the Act precludes Plaintiffs from challenging the Special Master's decisions regarding compensation, and Plaintiffs, in any event, fail to satisfy the prerequisites of Article III standing. *Finally*, Plaintiffs' alternative claim for relief likewise fails,

---

[1] Plaintiffs name the United States and the United States Department of Justice as Defendants but allege no actions by either of these entities relevant to the challenged conduct on the part of the GAO or the Special Master. Similarly, none of the relief sought in the Complaints would issue from either of these Defendants. To the extent the Department of Justice is named as a Defendant because the Special Master is an appointee of the Attorney General, both the authority to take the challenged actions and the relief requested are statutorily endowed in the Special Master and run through her. As to the Department of Justice and the United States, Plaintiffs have not alleged any facts demonstrating any element of standing, injury-in-fact, causation, or redressability, *cf. infra* regarding standing as to the Special Master, so those Defendants must be dismissed.

because they cannot state a claim or establish jurisdiction for their allegation that the Special Master violated the Act's requirements for updating Fund Procedures.

Accordingly, for the reasons set forth below, the Complaints should be dismissed in their entirety.

## **BACKGROUND**

### I.    **Statutory Background**

In 2015, Congress enacted the Justice for United States Victims of State Sponsored Terrorism Act, which, among other things, established the United States Victims of State Sponsored Terrorism Fund.  Pub. L. No. 114-113, Div. O, tit. IV, § 404, 129 Stat. 2242, 3007-18 (2015); 34 U.S.C. § 20144.  The Fund provides compensation to eligible claimants who hold judgments against state sponsors of terrorism, hostages held in the United States embassy in Iran from 1979 to 1981 and their spouses and children, or the personal representatives of such persons who are deceased.  34 U.S.C. § 20144(c), (d).

***Special Master & Fund Procedures.***  In addition to creating the Fund, the Act mandates that the Attorney General appoint a Special Master to administer compensation from the Fund.  *Id.* § 20144(b).  It further directs the Special Master to "publish in the Federal Register and on a website maintained by the Department of Justice a notice specifying the procedures necessary for United States persons to apply and establish eligibility for payment" and provides that "[such] notice . . . [is] not subject to the requirements of section 553 of Title 5."  *Id.* § 20144(b)(2)(A).

On May 17, 2016, the then-Attorney General appointed Kenneth R. Feinberg, Esq. as the Special Master to administer the Fund.  *Id.* § 20144(b)(1)(A)–(B).  Shortly thereafter, the Special Master published the required notice of eligibility requirements and application procedures for compensation from the Fund in the Federal Register on July 14, 2016.  Justice for United States

Victims of State Sponsored Terrorism Act, 81 Fed. Reg. 45,535 (July 14, 2016) ("Fund Procedures").

The Special Master has the sole statutory authority to determine if claims are eligible for compensation from the Fund. 34 U.S.C. § 20144(c)(1). To establish an eligible claim under the Act, the claimant must hold a final judgment issued by a United States district court under state or federal law against a state sponsor of terrorism and arising from an act of international terrorism, for which the foreign state was found not immune under provisions of the Foreign Sovereign Immunities Act ("FSIA"), *id.* § 20144(c)(2)(A), or be a victim of the Iran hostage crisis, *id.* § 20144(c)(2)(B), (C).

Under the Act, payments from the Fund are generally determined using compensatory judgment amounts for judgment holders and statutorily determined amounts for Iran hostages and their families. *Id.* § 20144(d). The payments are made in pro rata distributions subject to statutory limitations, including a cap of $20 million on an individual's eligible claim and consideration of compensation that claimants have already received from sources other than the Fund. *Id.*

Pursuant to procedures issued by the Special Master, a claimant seeking to establish eligibility for payment from the Fund must submit, among other documents, a copy of the qualifying final judgment, including a list identifying any immediate family member(s) of the claimant also identified in the final judgment. *See* Fund Procedures, 81 Fed. Reg. at 45,537–39. The Special Master will then review and grant or deny applications for compensation. 34 U.S.C. § 20144(c)(1). All decisions of the Special Master with regard to compensation from the Fund must be made in writing and provided to the Attorney General and each claimant. *Id.* § 20144(b)(3). Such decisions are deemed final and not subject to administrative or judicial

review, except as provided for in the Special Master's internal hearing procedures.  *Id.* § 20144(b)(4).

   ***The Fairness Act—Appropriations for Lump Sum Catch-Up Payments.***  On December 29, 2022, Congress passed the Fairness for 9/11 Families Act (the "Fairness Act"), which amended the Act in several ways.  Fairness for 9/11 Families Act, Pub. L. No. 117-328, Div. MM, 136 Stat. 4459, 6106-11 (2022).   It first allocated funds for certain 9/11 victims, 34 U.S.C. § 20144(d)(4)(C)(iv), and as relevant here, created a separate appropriation for a reserve fund, from which lump sum catch-up payments[2] would be paid to certain victims of the 1983 Beirut barracks and 1996 Khobar Towers bombings, *id.* § 20144(d)(4)(D)(iv)(III).  The Fairness Act further amended the Act to require the Special Master to "update, as necessary as a result of the enactment of [the Fairness Act]," Fund Procedures and other guidance previously issued by the Special Master, and to make any such updates not later than 30 days after such enactment—*i.e.*, by January 28, 2023.  *Id.* § 20144(b)(2)(A).  The Special Master made no changes to the longstanding application procedures published in the Federal Register but did add a FAQ section on lump sum catch-up payments on the Fund's website.  *See* Rusnak Compl. ¶ 4; Christie Compl. ¶ 44.

   ***The Fairness Act—the GAO's Role & Report.***  The Fairness Act did not alter the statutory provisions authorizing the Special Master to make eligibility determinations on claimant applications, but it did add new provisions relating specifically to one-time lump sum catch-up payments.

---

[2] The purpose of these payments was to provide qualifying claimants with payments "in amounts that, after receiving the lump sum catch-up payments, would result in the percentage of the claims of such victims received from the Fund being equal to the percentage of the claims of non-9/11 victims of state sponsored terrorism received from the Fund, as of" December 29, 2022.  34 U.S.C. § 20144(d)(4)(D)(i).

In particular, the Fairness Act amended the Act to provide:

Not later than 30 days after the expiration of the comment period in clause (ii), the Comptroller General of the United States shall submit to the Committee on the Judiciary and the Committee on Appropriations of the Senate, the Committee on the Judiciary and the Committee on Appropriations of the House of Representatives, and the Special Master a report that includes the determination of the Comptroller General on-

> (I) the amount of the proposed lump sum catch-up payment for each 1983 Beirut barracks bombing victim;

> (II) the amount of the proposed lump sum catch-up payment for each 1996 Khobar Towers bombing victim; and

> (III) amount of lump sum catch-up payments described in subclauses (I) and (II).

34 U.S.C § 20144(d)(4)(D)(iii). The Fairness Act further amended the Act to require the Special Master to "authorize lump sum catch-up payments from the reserve fund established under subclause (I) in amounts equal to the amounts described in subclauses (I) and (II) of clause (iii)," within one year (but not sooner than 90 days) after the date on which the Comptroller General submits the aforementioned report to the appropriate Senate and House committees. *Id.* § 20144(d)(4)(D)(iv)(II).

On November 1, 2024, the GAO issued its final report. *See* U.S. Gov't Accountability Off., GAO-25-107564, U.S. Victims of State Sponsored Terrorism Fund: 1983 Beirut Barracks and 1996 Khobar Towers Bombing Claimants Due $614 Million, 1 (2024) ("GAO Report"), https://perma.cc/5SFM-AM8X. The GAO determined that of the 1983 Beirut barracks and 1996 Khobar Towers bombing victims with final judgments awarded before the Fairness Act's enactment (before December 29, 2022), 786 claimants were previously eligible to participate in the Fund. *Id.* at 17. And of those 786 previously eligible claimants, 274 of them did not submit applications during the Fairness Act's amended application period of 180 days, *i.e.*, from December 29, 2022, to June 27, 2023. *Id.* at 15–18; 34 U.S.C. § 20144(c)(3)(1)(ii)(II). Because

those 274 claimants did not submit applications for lump sum catch-up payments during the period of December 29, 2022, to June 27, 2023, the GAO concluded that "[t]he Fairness Act does not authorize GAO to include" these claimants in the "[GAO's] calculations of lump sum catch-up payments." GAO Report at 19–20. *See also id.* at 21 ("[The GAO] could not include these [274] claimants in [its] catch-up payment calculations because [those claimants] did not submit applications during the time frame, which is a requirement under the Fairness Act."). The GAO further explained that because "Fund officials have stated that the Fund's procedures do not provide for accepting or reviewing additional applications from claimants who previously applied to the Fund and were found eligible," "there is no mechanism to address the advice the Fund provided that may have prevented otherwise eligible claimants from submitting applications during the statutory application time frame." *Id.* at 20. Consequently, the GAO recommended that Congress "amend[] the [Act] to direct the Special Master to make lump sum catch-up payments to those among the 274 claimants who did not submit applications during the statutory application time frame because of Fund guidance . . . ." *Id.* The GAO then concluded its findings with the following explanation: "To ensure that the Fund can identify these claimants and make payments *if the statute is amended*, we are providing the claim identification numbers and lump sum catch-up payment amounts that we calculated for the 274 claimants to the Special Master with this report." *Id.* (emphasis added).

In compliance with the Act, as amended by the Fairness Act, the Special Master authorized lump sum catch-up payments only for those claimants for whom the GAO calculated amounts and proposed payments in the GAO Report. 34 U.S.C. § 20144(d)(4)(D)(iv)(II). In other words, the Special Master authorized lump sum catch-up payments to the 2,081 claimants identified in the GAO Report as eligible to receive them, and did not authorize payments to the 274 claimants—

including Plaintiffs—for whom the GAO calculated amounts but explicitly did not propose payment. *Id. See also* Dep't of Justice, Special Master's Report Regarding Lump Sum Catch-Up Payments to Victims of the 1983 Beirut Barracks Bombing and 1996 Khobar Towers Bombing, (Mar. 2025), https://perma.cc/L4RU-APA9; *id.* at 3 n.8 (distinguishing the 2,081 claimants for whom the GAO proposed and the Special Master authorized lump sum catch-up payments from the 274 claimants for whom the GAO calculated but did not propose payments).

## II.    Procedural Background

On January 31, 2025, Plaintiffs Rusnak and Zook—two veterans who were injured in the 1996 Khobar Towers bombing and submitted complete applications to the Fund prior to the enactment of the Fairness Act—filed suit against the United States; the Comptroller General, in his official capacity; the Special Master, in her official capacity; and the Department of Justice. Complaint ¶ 2, *Rusnak v. United States*, No. 25-cv-292 (D.D.C.), ECF No. 1 ("Rusnak Compl."); *see also id.* ¶¶ 60–84.  On March 28, 2025, a second group of 34 similarly situated veterans and immediate family members filed suit against the same Defendants alleging the same causes of action. Complaint ¶ 5, *Christie v. United States*, No. 25-cv-932 (D.D.C.), ECF No. 1 ("Christie Compl."); *see also id.* ¶¶ 64–88.  In addition to seeking injunctive relief to preserve reserve funds, Plaintiffs ask the Court to (1) "declare that the Fairness Act requires the Special Master to authorize lump sum catch-up payments for each 1983 Beirut barracks bombing victim and 1996 Khobar Towers bombing victim," and (2) "order the Special Master to authorize catch-up payments for Plaintiffs in the amounts computed by the Comptroller General."  Rusnak Compl. ¶¶ 63–64, 72– 73; Christie Compl. ¶¶ 67–68, 76–77.  On May 21, 2025, the Court consolidated briefing on Defendants' motion to dismiss the two complaints.  Rusnak May 21, 2025, Minute Order; Christie May 21, 2025, Minute Order.

## LEGAL STANDARD

Defendants move to dismiss this case under Federal Rule of Civil Procedure 12(b)(1). Motions brought pursuant to Rule 12(b)(1) challenge whether the district court has jurisdiction over the action.  *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and a party claiming subject-matter jurisdiction bears the burden of demonstrating that such jurisdiction exists, *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  When a defendant raises an issue of subject-matter jurisdiction under Rule 12(b)(1), the Court must resolve the jurisdictional issue before it proceeds to the merits of the plaintiff's claims.  *See, e.g., Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). "When reviewing a challenge pursuant to Rule 12(b)(1), the Court may consider documents outside the pleadings to assure itself that it has jurisdiction." *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003).

Defendants also move for dismissal under Federal Rule of Civil Procedure 12(b)(6) as to Plaintiffs' claims involving the Special Master's strict adherence to statutory commands.  To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  In assessing a Rule 12(b)(6) motion, the Court must consider all well-pled allegations in a complaint as true and view the complaint in the light most favorable to the plaintiff.  *See Albright v. Oliver*, 510 U.S. 266, 268 (1994).  However, these principles do not apply to "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## ARGUMENT

Plaintiffs assert a variety of causes of action for declaratory and injunctive relief under the APA, the Declaratory Judgment Act, and the Mandamus Act.[3]  Regardless of those purported (and duplicative) causes of action, Plaintiffs, at bottom, seek to be awarded increased compensation from the Fund.  Indeed, while Plaintiffs devote significant portions of their Complaints to describing a disagreement between various government entities, the Rusnak Plaintiffs nevertheless concede that those merits-related disputes are ultimately irrelevant to the relief they seek.  *See* Rusnak Compl. ¶ 11.  Defendants agree.  Plaintiffs' merits allegations are irrelevant here, and the Court should dismiss the Complaints because of their facial defects—namely, (1) the Comptroller General, in his official capacity, is not a proper defendant in this action; (2) Plaintiffs fail to allege any agency action unlawfully withheld by the Special Master; (3) the Court lacks subject-matter jurisdiction over Plaintiffs' claims against the Special Master; and (4) Plaintiffs fail to allege, in the alternative, that the Special Master did not comply with the Act.

Accordingly, the Complaints must be dismissed in their entirety.

## I.    All Claims Against the Comptroller General Must Be Dismissed

Plaintiffs' claims against the Comptroller General are predicated on a single allegation: the GAO erred in concluding that the 274 claimants (including Plaintiffs) were required to resubmit applications in order to be eligible to receive lump sum catch-up payments.  *See, e.g.*, Rusnak Compl. ¶¶ 43, 62, 67; Christie Compl. ¶¶ 37, 65, 71.  Whether brought pursuant to the APA, the

---

[3] As noted *supra*, although Plaintiffs in the two cases make slightly different allegations in the factual background sections of their Complaints, the allegations of their causes of action are identical.

Declaratory Judgment Act, or the Mandamus Act, those claims against the Comptroller General (and the GAO) fail as a matter of law.[4]

Plaintiffs cannot state an APA claim against the GAO, because the "GAO—an entity within the legislative branch—is not an agency under the APA." *Pond Constructors, Inc. v. GAO*, No. 17-0881(DLF), 2018 WL 3528309, at *1 (D.D.C. May 30, 2018). "APA exemption for 'the Congress' mean[s] the entire legislative branch," and thus, the APA "does not waive sovereign immunity for suits against [the] GAO." *Id.* (citing *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994)). *See also Chen v. Gen. Acct. Off.*, 821 F.2d 732, 737 n.6 (D.C. Cir. 1987) (concluding that the GAO was "exempt from many APA provisions" because it "is generally recognized as a part of the legislative branch"); *Coll. Sports Council v. GAO*, 421 F. Supp. 2d 59, 61, 66 (D.D.C. 2006) ("logically conclud[ing] that the GAO is not an agency for the purposes of the APA" because it "is 'an independent agency within the Legislative Branch'" (quoting *Bowsher v. Merck & Co.*, 460 U.S. 824, 844 (1983)).

Plaintiffs cannot overcome this APA jurisdictional bar through the Declaratory Judgment Act, which, in the absence of any cognizable statutory or common law claim, does not supply an independent cause of action. *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) ("It is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction." (quotations and citations omitted)). Here, the relevant statute does not "state that a private entity may bring suit to enforce [the Act's] provisions." *Coll. Sports*, 421 F. Supp. 2d at 65; *see generally* 34 US.C. § 20144. Rather, the Act merely directs the Comptroller General to

---

[4] Plaintiffs brought suit against the Comptroller General of the United States in his official capacity as the head of the GAO. "A lawsuit against a government official in his official capacity is an action against the governmental entity of which the official is an agent." *Wilburn v. Robinson*, 480 F.3d 1140, 1148 (D.C. Cir. 2007).

"conduct an audit" and submit "a report" to the Special Master and certain committees within Congress.  34 U.S.C. § 20144(d)(4)(D)(i)–(iii).  The absence of any "rights-creating language" in the Act thus precludes any declaratory relief.  *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).

Plaintiffs' claims against the GAO under the Mandamus Act fare no better.  A plaintiff seeking mandamus "must clear three high hurdles":  he must first demonstrate that he has no other adequate means of relief, and, second, establish that the "right to issuance of the writ is clear and indisputable" and "will compel the government official to perform a ministerial duty."  *Leopold v. Manger*, 102 F.4th 491, 497 (D.C. Cir. 2024) (citations omitted).  But even if a plaintiff's claim could "survive[] those two bars, yet another awaits: he must convince the issuing court that the writ is appropriate under the circumstances."  *Id.* (citation omitted).  To be sure, "[m]andamus jurisdiction lies only to compel ministerial, as opposed to discretionary, duties," and the plaintiff bears the burden of alleging that jurisdictional prerequisite.  *Id.* at 497–98.  *See also Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (To demonstrate a clear and indisputable right to mandamus a plaintiff must demonstrate that "(1) [he] has a clear right to relief [and] (2) the defendant has a clear duty to act." (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)).  Mandamus is therefore a "drastic" remedy; "it is available only in 'extraordinary situations'; it is hardly ever granted . . . and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary."  *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005).

Plaintiffs come nowhere close to establishing the availability of mandamus as to the GAO.[5] The Act imposed a single duty on the GAO: to conduct an audit and produce a report to Congress

---

[5] It is not clear from the face of the Complaints as to whether Plaintiffs seek mandamus relief against the GAO; while all counts in the Complaint include "Defendants," the factual allegations

relating to lump sum catch-up funds, 34 US.C. § 20144(d)(4)(D)(i)–(iii)—and the GAO did just

that, *see generally* GAO Report.  As a result, Plaintiffs have not, and cannot, make any colorable

argument the GAO has any other "clear duty to act" under the statute.  *Fornaro*, 416 F.3d at 69.

Nor can Plaintiffs establish that they have any "clear right to relief," *id.*, when the statute does not

provide otherwise.  But even if Plaintiffs had alleged any "clear duty to act," their own

allegations—that the "GAO proffered an (incorrect) *interpretation* of the Fairness Act's

audit-and-publish provision," Rusnak Compl. ¶ 66 (emphasis added); Christie Compl. ¶ 70

(emphasis added)—confirm that the GAO's role was not merely "ministerial" or nondiscretionary;

therefore, the GAO's actions cannot be compelled under mandamus.  Even without these hurdles,

it would be "manifestly unnecessary to compel [the GAO] to act on [Plaintiffs' mandamus] claim,

inasmuch as [the GAO] rendered its [report]" over six months ago.  *Gray v. Off. of Pers. Mgmt.*,

771 F.2d 1504, 1514 (D.C. Cir. 1985).  *See also Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*,

219 F. Supp. 2d 20, 42 (D.D.C. 2002) (recognizing that a mandamus claim is moot where the

requested duty was subsequently performed).

Accordingly, the Court should dismiss the Comptroller General (and all claims against

him) as a Defendant from both cases.[6]

## II.    Plaintiffs Fail to State a Claim Against the Special Master

Plaintiffs seek to compel the Special Master to authorize additional lump sum catch-up

payments under the Act.  But they have not alleged any agency action unlawfully withheld under

---

seeking the Court to compel agency action are directed solely at the Special Master.  *See, e.g.*,
Rusnak Compl. ¶¶ 64, 73, 77; Christie Compl. ¶¶ 68, 77, 81.

[6] Dismissal of the Comptroller General compels dismissal of Count II of both Complaints, which
both allege unlawful actions by the GAO only.  *See* Rusnak Compl. ¶¶ 66-–67; Christie Compl. ¶¶
70–71.  However, even if that were not the case, the Court would lack jurisdiction to consider
Count II in both Complaints, because the challenged actions of the GAO are inextricably
intertwined with, and indispensable to, the challenged actions of the Special Master, which in turn
are jurisdictionally barred from judicial review.  *See infra*, § III.

the APA, and in any event, the Special Master lacks discretion to take the action Plaintiffs seek. Those fatal defects, coupled with Plaintiffs' failure to challenge the underlying statute that directs the Special Master's action, demand dismissal of Counts I and III in both Complaints.

**A.** Plaintiffs contend that the Special Master unlawfully withheld lump sum catch-up payments from them and that those payments can be compelled. *See* Rusnak Compl. ¶¶ 61, 64, 70–73; Christie Compl. ¶¶ 65, 68, 74–77. But "the only action a court may compel an agency to take under § 706(1) is a discrete action that the agency has a duty to perform." *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018) (citing *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 62–63 (2004)). That "legal duty must be 'ministerial or nondiscretionary' and must amount to 'a specific, unequivocal command.'" *Id.* (quoting *SUWA*, 542 U.S. at 63–64).[7]

Here, Plaintiffs allege that the "Fairness Act . . . mandated that the Special Master 'shall authorize' lump sum catch-up payments from a reserve fund in amounts set forth in the Report of the Comptroller General," Rusnak Compl. ¶ 29; *see also* Christie Compl. ¶ 23, and that the GAO Report "included proposed lump sum catch-up payment amounts for each of the Plaintiffs," Rusnak Compl. ¶ 31; *see also* Christie Compl. ¶ 41 ("Despite the GAO's position…the GAO included in its report computed lump sum catch-up payment amounts for the 274 Excluded Eligible Claimants….").  Thus, in Plaintiffs' view, the Special Master violated the Fairness Act, because she failed "to take the ministerial step of allocating payment to the Plaintiffs in the amounts

---

[7] These arguments apply with equal force to the extent Plaintiffs seek the same relief pursuant to the Declaratory Judgment Act and the Mandamus Act.  In other words, the failure to allege a viable APA claim for agency action unlawfully withheld likewise dooms Plaintiffs' requests for declaratory and mandamus relief.  *See supra* § I; *see also Jud. Watch*, 219 F. Supp. 2d at 42 ("When a federal official has an obligation to perform a ministerial or non-discretionary duty, a federal district court may issue a writ of mandamus under § 1361 to compel that officer to fulfill the obligation.").

determined by the Comptroller General." Rusnak Compl. ¶ 40; *see also* Christie Compl. ¶ 58 ("Because those amounts are properly set forth in the Report . . . the Special Master was required to authorize catch-up payments for the Plaintiffs.").

Plaintiffs' allegations, however, elide one critical fact: the Comptroller General did not "propose" any authorized lump sum catch-up payments as to Plaintiffs, or any of the other 274 similarly situated claimants who failed to submit a separate application following the enactment of the Fairness Act. Rather, the GAO Report explicitly states that "[t]he Fairness Act does not authorize GAO to include these [274] claimants"—including Plaintiffs—"in [the GAO's] calculations of lump sum catch-up payments . . . ." GAO Report at 20.[8] *See also id.* at 21 ("[The GAO] could not include these [274] claimants in [its] catch-up payment calculations because [those claimants] "did not submit applications during the time frame, which is a requirement under the Fairness Act."). Indeed, the GAO Report directly contradicts Plaintiffs' argument that the hypothetical lump sum catch-up payment amounts calculated for the 274 claimants can be considered "proposed" payments under the statute, because the Report states that the GAO is "providing the claim identification numbers and lump sum catch-up payment amounts that [it] calculated," only to "ensure that the Fund can identify these claimants and make payments *if the statute is amended*." *Id.* at 20 (emphasis added).

The Special Master does not have (as Plaintiffs contend) a "ministerial and nondiscretionary" duty to pay out any amounts that happen to be identified in any context in the GAO Report. Indeed, there is a "specific, unequivocal command" in the Act for the Special Master

---

[8] In addition to the facts alleged in a complaint, a court may consider "a document incorporated by reference into the complaint," and "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Greer v. Bd. of Trs. Of the Univ. of the Dist. of Columbia*, 113 F. Supp. 3d 297, 303 (D.D.C. 2015) (citations omitted).

to authorize only payments for lump sum catch-up amounts that the GAO has proposed; meaning, the Special Master cannot authorize any payments that the GAO expressly excluded and would not propose absent congressional amendment.  *Zinke*, 892 F.3d at 1241; *see also Jud. Watch*, 219 F. Supp. 2d at 42.  In other words, the Act expressly directs the Special Master to authorize "the amount of the *proposed* lump sum catch-up payment for each 1996 Khobar Towers bombing victim" as "determin[ed]" by the Comptroller General—nothing more, nothing less.  34 U.S.C. § 20144(d)(4)(D)(iii)(II) (emphasis added); *see also id.* § 20144(d)(4)(D)(iv)(II).

Plaintiffs' reliance on the fact that the GAO included theoretical payment calculations for 274 claimants is of no moment here.  Those calculations were included, as the GAO made clear, to ensure the good administration of the Fund in the event "the statute is amended."  GAO Report at 20.  Plaintiffs concede as much.  *See* Rusnak Compl. ¶¶ 7, 31(e); Christie Compl. ¶ 41 (stating that Plaintiffs' potential payment amounts were included only in the event of a statutory amendment).  Thus, the Court may not second-guess the Comptroller General's unequivocal determination that lump sum catch-up payments could not be proposed for Plaintiffs, or impute different authority to the Special Master that Congress did not provide.

**B.**  For the same reason, Plaintiffs likewise fail to state a claim because they have not raised any challenge to the Act itself.  The Act dictates that the Special Master make lump sum catch-up payments only to the individuals for whom proposed payments were identified in the GAO Report.  34 U.S.C. § 20144(d)(4)(D)(iii)(II); *id.* § 20144(d)(4)(D)(iv)(II).[9]  Thus, Plaintiffs cannot plausibly allege that the Special Master acted contrary to or in excess of statutory authority, when she did

---

[9] By contrast, Congress knows how to provide the Special Master with broader discretion when it wants to do so.  For example, Congress authorized that the Fund be "managed and invested" in the same manner as a trust fund under 26 U.S.C. § 9602.  *See* 34 U.S.C. § 20144(e)(4).  These provisions stand in stark contrast to Congress's nondiscretionary directive for the Special Master to provide payments only in the proposed amounts set forth in the GAO Report.

exactly what the Act requires.  *See, e.g.*, *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("an agency literally has no power to act . . . unless and until Congress confers power upon it."). *Def. Arlington v. U.S. Dep't of Def*, Nos. 23-cv-441, 23-cv-2094, 2023 WL 8600567, at *12 (D.D.C. Dec. 12, 2023) (where defendants "do[] not have discretion," "the APA is not the appropriate vehicle for review").  Plaintiffs have not challenged any aspect of that statutory command, and accordingly, fail to state a claim against the Special Master as a matter of law.

## III.    The Court Lacks Jurisdiction to Review the Decisions of the Special Master

Counts I and III of Plaintiffs' Complaints suffer from yet another fatal defect, as they run headlong into clear jurisdictional bars to judicial review.  *First*, Plaintiffs' claims against the Special Master—which are claims of wrongful denial of compensation from the Fund, *see, e.g.*, Rusnak Compl. ¶ 40, 63–64, 70–73; Christie Compl. ¶ 45, 67–68, 74–77—are expressly barred by the Act itself.  *Second*, Plaintiffs cannot satisfy Article III standing, because under either construction of their claims (and prospective relief), they fail to satisfy the prerequisites of injury-in-fact or redressability.  These foregoing jurisdictional defects require dismissal of Counts I and III of the Complaints.

### A.    The Special Master's Decisions with Regard to Compensation from the Fund Are Not Subject to Judicial Review

When Congress bars judicial review of administrative action, courts lack jurisdiction to hear claims challenging the agency's conduct.  *See Mercy Hosp., Inc. v. Azar*, 891 F.3d 1062, 1071 (D.C. Cir. 2018).  Likewise, when APA review is unavailable due to statutory preclusion, the APA's waiver of sovereign immunity does not apply, and thus, no jurisdiction exists to entertain the challenge.  *See, e.g.*, *Brownback v. King*, 592 U.S. 209, 217–18 (2021); *Washington v. U.S. Dep't of State*, 996 F.3d 552, 565 (9th Cir. 2021).  Here, the Act falls squarely within the APA's carve-out for nonreviewable claims, and thus, the Court lacks jurisdiction over Plaintiffs' claims against the

16

Special Master. *See* 5 U.S.C. § 701(a)(1) (a claim may not be brought under the APA "to the extent that . . . statutes preclude judicial review").

1.     Although courts presume that Congress ordinarily "intends judicial review of administrative action," that presumption is "rebuttable by a clear statement of congressional intent to preclude review." *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017) (quoting *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986)). Congress therefore is free to leave district courts without jurisdiction to review particular claims against an agency. *See Ralpho v. Bell*, 569 F.2d 607, 622 n.101 (D.C. Cir. 1977) (nothing "prevent[s] [Congress] from shielding even the most patent deviation from the statutory scheme from judicial redress where the Constitution is in no wise implicated"). "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984).

Here, congressional preclusion of judicial review is plainly evident. The Act states in no uncertain terms that "[a]ll decisions made by the Special Master with regard to compensation from the Fund" are "not subject to administrative or judicial review." 34 U.S.C. § 20144(b)(3). That necessarily includes the Special Master's distribution of lump sum catch-up payments to individuals possessing judgments related to the Khobar Towers bombing; because while those payment authorizations were executed without discretion, the Special Master nonetheless made a decision about the availability (or unavailability) of certain types of compensation to certain claimants, including Plaintiffs. Such decisions are facially decisions made by the Special Master "with regard to compensation from the Fund" and thus expressly precluded from judicial review under the Act. *Id.* § 20144(b)(3).

17

**2.**    Indeed, recent decisions by courts in this District, as they relate to the jurisdiction-stripping provision in § 20144, compel the same result, as they focus on the nature of the relief requested, not the characterization of the claims by plaintiffs.    *See, e.g.*, *O'Neill v. Garland*, No. 21-cv-1288(JEB), 2022 WL 17415057, at *5 (D.D.C. Dec. 5, 2022) ("when the text of a statute precludes judicial review, the Court must look beyond [p]laintiffs' characterization of their challenge and view their claim through the perspective of the relief sought").    In this case, the Court need not even parse the true nature of Plaintiffs' claims, because it is clear on the face of the Complaints that Plaintiffs seek (1) reconsideration of the Special Master's individual compensation decisions, Rusnak Compl. ¶¶ 63, 72; Christie Compl. ¶¶ 67, 76, and (2) individual payments from the Fund as a result, Rusnak Compl. ¶¶ 64, 73; Christie Compl. ¶¶ 68, 77.    That is, the specific relief Plaintiffs seek makes clear that their claims are predicated on challenging (and overturning) the Special Master's decisions regarding "the amount of compensation from the Fund."    34 U.S.C. § 20144(b)(3).    Such relief is clearly impermissible, as Congress expressly precluded such claims from being subject to judicial review.    *See id.* ("All decisions made by the Special Master with regard to compensation from the Fund" are "not subject to administrative or judicial review."); *Braun v. United States*, 531 F. Supp. 3d 130, 135 (D.D.C. 2021) (Special Master's "individual determinations regarding eligibility and entitlement" "are expressly shielded from judicial review"), *aff'd*, 31 F.4th 793 (D.C. Cir. 2022).

But even if Plaintiffs attempt to disavow that specific relief, Judge Boasberg's decision in *O'Neill* underscores that Plaintiffs' attempt to cast their claims as programmatic in nature is of no import.    *See* Rusnak Compl. ¶¶ 61–62, 67; Christie Compl. ¶¶ 65–66, 71 (challenging the Special Master's decision to abide by the GAO's interpretation of the Fairness Act).    In *O'Neill*, the plaintiffs likewise insisted that they were not challenging an individual eligibility determination

but making "a broad programmatic" challenge to the Special Master's determination.  2022 WL 17415057, at *5 (citation omitted).  The court, however, rejected that distinction, concluding that "the end result and the relief [plaintiffs] [sought] is the same as if a single [] claimant had raised this issue with respect to her particular claim: to draw more money from the Fund."  *Id.* at *6.  In other words, no matter how the claims or the relief are characterized by Plaintiffs, this case, like *O'Neill*, "boils down to a dispute over the appropriate amount of compensation from the [F]und." *Id.*; *see also id.* at *5–6 (applying the Supreme Court's approach in *Heckler v. Ringer*, 466 U.S. 602 (1984), to look beyond the characterization of the claims in the complaint to the actual import of a decision).

Indeed, courts outside this Circuit have confirmed the breadth of this jurisdictional bar.  In *Hekmati v. United States*, the Court of Federal Claims confronted the same jurisdictional question under the Act.  153 Fed. Cl. 800 (2021), *aff'd*, 51 F.4th 1066 (Fed. Cir. 2022).  And while the plaintiff there argued that the Special Master lacked the authority to reconsider his previously granted claim, the *Hekmati* court, like the *O'Neill* court, looked beyond such characterizations and dismissed the suit on jurisdictional grounds, finding that the plaintiff fundamentally sought impermissible judicial review of the Special Master's determination regarding the plaintiff's eligibility for compensation from the Fund.  *Id*. at 812.

The Second Circuit's treatment of a similar statutory scheme, the September 11th Victim Compensation Fund ("VCF")—in which the VCF's jurisdiction-stripping provision mirrors the Act's jurisdiction-stripping provision at issue here—is likewise instructive.  In *Schneider v. Feinberg*, the Second Circuit considered a challenge to the "presumed award process" articulated in regulations promulgated by the VCF's Special Master.  345 F.3d 135, 138 (2d Cir. 2003).  There, the Second Circuit, in affirming the district court's dismissal, concluded that plaintiffs effectively

sought to challenge the VCF Special Master's "award" determinations, which, as here, were expressly precluded from judicial review.  *Id*. at 145 ("Congress has confided each award to the sealed box of a Special Master's mind . . . and has placed the result beyond the reach of review."); *Compare* Air Transportation Safety and System Stabilization Act, Pub. L. No. 107-42, § 405(b)(3), 115 Stat. 230 (2001) ("Such a determination [by the Special Master] shall be final and not subject to judicial review."), *with* 34 U.S.C. § 20144(b)(3)–(4) ("All decisions made by the Special Master with regard to compensation from the Fund" are "not subject to administrative or judicial review.").

Likewise, in *Heckler*, individuals who had been denied reimbursement under the Medicare Act for a particular form of surgery sought review of the Secretary's policy that precluded reimbursement.  466 U.S. at 610–11.  Noting that the individuals requested a declaration that their expenses were reimbursable under the Medicare Act, the Supreme Court held that respondents' challenges to the Secretary's procedures were "at bottom, a claim that they should be paid for their . . . surgery," and therefore precluded from judicial review.  *Id*. at 614.  *Ringer* ultimately confirms that programmatic challenges are in fact "inextricably intertwined" with denial of payment and thus precluded from judicial review.  *Id*.

*          *          *

*O'Neill*, *Braun*, *Hekmati*, *Schneider*, and *Heckler*, independently and collectively point to an applicable jurisdictional bar.  In each of those cases, the claimants sought to evade preclusion of judicial review by bringing challenges that they contended reached beyond individual compensation decisions.  Plaintiffs in this case do not even do that much; they explicitly ask the Court to reverse individual compensation decisions notwithstanding Congress's clear jurisdictional bar.  Such claims—whether alleged individually or programmatically—are clearly outside of this Court's subject-matter jurisdiction and must be dismissed as a matter of law.

### B.    Plaintiffs Cannot Establish Standing

To the extent Plaintiffs argue that they are seeking something other than relief from their individual compensation decisions, their position creates a jurisdictional double-bind. "Absent any one" of the three elements of the "irreducible constitutional minimum" of standing—"injury-in-fact, traceability, and redressability"—federal courts lack subject-matter jurisdiction. *Williams v. Lew*, 819 F.3d 466, 475 (D.C. Cir. 2016) (citation omitted).

Here, the only harm Plaintiffs have alleged is the denial of individual lump sum catch-up payments. *See, e.g.*, Rusnak Compl. ¶¶ 40, 42, 63–64, 72–73; Christie Compl. ¶¶ 67–68, 76–77. Thus, to the extent Plaintiffs contend that their individual compensation decisions are not the harm they seek to remedy, they have failed to plausibly allege any injury-in-fact, and their claims must be dismissed for lack of standing. If instead, Plaintiffs rely on the alleged harms relating to their individual compensation decisions to establish Article III standing, *see* Rusnak Compl. ¶¶ 40, 63–64, 70–73; Christie Compl. ¶¶ 67–68, 76–77, they have failed to plausibly allege redressability, because the Court cannot review those decisions, *see supra* § III.A. Thus, under either construction of their claims, Plaintiffs cannot satisfy the jurisdictional prerequisites of Article III standing.

### IV.    Plaintiffs' Alternative Claim Against the Special Master Fails As a Matter of Law

Plaintiffs also assert an alternative merits argument that they contend the Court should reach if it "find[s] that the Fairness Act required the submission of duplicative applications for lump-sum catch up payments or that it cannot review the government's interpretation of that provision." Rusnak Compl. ¶ 75; Christie Compl. ¶ 79. They ask the Court, under such circumstances, to hold that the Special Master "acted unlawfully, arbitrarily, and capriciously by failing to update Fund procedures and guidance to allow for the submission of [duplicate] applications." Rusnak Compl. ¶ 75; Christie Compl. ¶ 79. The Court cannot consider the merits of Counts I–III, for the reasons explained above, *supra*; nor can it otherwise exercise jurisdiction

over any of the Defendants in connection with the claims of this case.  However, if the Court were to conclude that it could not review Plaintiffs' principal substantive claims in this case but could nevertheless somehow exercise jurisdiction over the Special Master, Plaintiffs' alternative argument nonetheless fails as a matter of law.

Plaintiffs cannot state a claim that would require a change to the Fund Procedures, as it relates to the Fairness Act, because the Court cannot grant that relief.  The statute mandates a clear deadline for when any changes to Fund Procedures relating to the Fairness Act may be implemented.  Specifically, the Act, as amended, provides that within "30 days after the date of enactment of the Fairness for 9/11 Families Act," *i.e.*, by January 28, 2023, "the Special Master shall update, *as necessary* as a result of the enactment of such Act, such procedures and other guidance previously issued by the Special Master."  34 U.S.C. § 20144(b)(2)(A) (emphasis added).  In other words, this provision grants the Special Master discretion to make changes to the Fund Procedures under the Fairness Act in the manner she deems necessary.  But it imposes a nondiscretionary duty to do so, if at all, within 30 days of that enactment.  That January 2023 deadline has come and gone.  And the Special Master retains no authority at this stage to amend the Fund Procedures on the basis of the Fairness Act.  *See Beberman v. Blinken*, 61 F.4th 978, 983 (D.C. Cir. 2023) (a court "cannot order an agency to exceed its statutory authority").  Nor does the GAO's recommendation that the statute be amended to allow for "duplicative" applications—well after the time to change Fund Procedures relating to the Fairness Act had elapsed—create any right to challenge the Fund Procedures as they currently exist.

Plaintiffs' request for mandamus relief is even further afield.  *See* Rusnak Compl. ¶ 77; Christie Compl. ¶ 81 (requesting that "the Court order the Special Master to issue such procedures and accept additional applications for catch-up payments").  Even if the relief requested were not

now prohibited by the separation of powers, *see Beberman*, 61 F.4th at 983, nothing in the statute, as it relates to the modification of the Fund Procedures, ever created a "ministerial duty" that was "so plainly prescribed as to be free from doubt and equivalent to a positive command." *Wilbur v. United States ex rel. Kadrie*, 281 U.S. 206, 218–19 (1930). *See also In re Cheney*, 406 F.3d at 729 ("[T]hose invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to relief; and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary."). To the contrary, the Fairness Act makes clear that the Special Master shall update such Fund Procedures "*as necessary*." 34 U.S.C. § 20144(b)(2)(A) (emphasis added). Meaning, there was plainly discretion in the Special Master's ability to amend Fund Procedures prior to the statutory deadline of January 28, 2023—thus precluding mandamus relief altogether. *Wilbur*, 281 U.S. at 218–19 ("[W]here the duty is not thus plainly prescribed, but depends on a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus."). *See also Fornaro*, 416 F.3d at 69 (a writ of mandamus "compel[s] an official to perform a duty *required* in his official capacity" (emphasis added)).

## V.    The Parties Have Already Stipulated to Preservation of Funds

Because the lump sum catch-up payment reserve fund may be terminated after the Special Master disperses all lump sum catch-up payments, Plaintiffs separately seek injunctive relief to preserve the lump sum catch-up payments that would be allocated to them if they were to prevail in this litigation. Rusnak Compl. ¶¶ 80–82; Christie Compl. ¶¶ 84, 86. On February 25, 2025, the parties in *Rusnak*, in an effort to avoid emergency motions practice, entered into a joint stipulation whereby Defendants stated that they would "ensure that amounts sufficient to meet the payment amounts which Plaintiffs seek through this lawsuit will remain available until at least February 1, 2026." Rusnak Stipulation at 2, ECF No. 15. Defendants further committed to giving "Plaintiffs

at least 21-days' advance notice before taking any action that would leave less than the amount which Plaintiffs seek in this lawsuit remaining." *Id.*

On April 17, 2025, the parties entered into an equivalent stipulation in *Christie*. *See* Christie Stipulation at 3, ECF No. 12 ("Defendants will ensure that amounts sufficient to meet the payment amounts which Plaintiffs seek through this lawsuit will be held in reserve for the duration of the litigation before this Court."; "Defendants further commit to give Plaintiffs at least 21-days' advance notice before taking any action that would leave less than the amount which Plaintiffs seek in this lawsuit remaining available for payment to Plaintiffs."). In light of the parties' joint stipulations, there is no need for the Court to issue an injunction to preserve the funds pending the resolution of the litigation before this Court.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaints in their entirety.

Dated: June 9, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Keri L. Berman*
KERI L. BERMAN
SARAH M. SUWANDA
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 305-7538
Email: keri.l.berman@usdoj.gov

*Counsel for Defendants*